**William Jefferson HARKINSON, et al., Appellants,**

v.

**TRAMMELL CROW COMPANY NO. 60, et al., Appellees.**

**No. 05–93–01504–CV.**

Court of Appeals of Texas, Dallas.

Aug. 25, 1995.

William Pannill, Pannill Moser & Barnes, L.L.P., Houston, Roy L. Barnes, Pannill Moser & Barnes, L.L.P., Houston, for appellants.

Edward P. Perrin, Jr., Crouch & Hallett, L.L.P., Dallas, Kim M. Meaders, Crouch & Hallett, L.L.P., Dallas, Dale McCollough, Trustee HPC Laboratories, Dallas, Dan E. Patterson, R. Best Associates, Inc., Dallas, Douglas C. Kittelson, Cooper, Glasgow, Kupchynsky & Kittelson, L.L.P., Dallas, for appellees.

Before KINKEADE, MORRIS and WHITHAM[1], JJ.

## OPINION

MORRIS, Justice.

This is a summary judgment case. We decide whether various tort and contract causes of action brought by a licensed real estate broker are barred by the Texas Real Estate License Act because the broker did not have a written commission agreement. We conclude that not all of the broker's causes of action are barred.

Asserting four points of error, William Jefferson Harkinson and Jeff Harkinson Investments, Inc. ("Harkinson") appeal the summary judgment rendered in favor of Trammell Crow Company No. 60, Petula Associates, Ltd., Trammell Crow Dallas Industrial, Inc., Richard Strader, Thomas A.

Leiser, Principal Mutual Life Insurance Company, and Douglas D. Achtemeier (the "Crow Defendants") and Hunt Products Company, Inc., Patterson/McLaine Group, Inc., and Dan E. Patterson (the "Hunt Defendants"). Harkinson challenges the summary judgment because it is based upon the trial court's conclusion that all of Harkinson's causes of action are barred by section 20(b) of the Texas Real Estate License Act (RELA). For the reasons stated below, we conclude section 20(b) does not bar Harkinson's claims for tortious interference or conspiracy to interfere. But we also conclude section 20(b) does bar Harkinson's claims for fraud, breach of a written agency agreement, and breach of an agreement to "share" a commission. We further conclude that section 20(b) does not permit Harkinson to enforce an oral commission agreement even though he pleaded the doctrine of promissory estoppel. Accordingly, we affirm the trial court's judgment in part and reverse it in part.

## FACTUAL BACKGROUND

The summary judgment evidence presented to the trial court revealed the parties were involved in a sizeable real estate transaction.[2] More particularly, in the spring of 1991, Harkinson, a licensed real estate broker, entered into a written exclusive agency agreement with the Hunt Defendants.[3] Specifically, the agreement contemplated Harkinson would negotiate for lease space for Hunt Products Company. Hunt Products agreed to refer directly to Harkinson all inquiries or offers it received. Harkinson in turn agreed to look solely to the prospective landlord for his compensation and further agreed there would be no direct charge to Hunt Products for his services.

---

1. The Honorable Warren G. Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. Our recitation of the facts reflects the applicable standard of review in that we must take as true all evidence favoring the nonmovant. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

3. The terms "Hunt Defendants" and "Crow Defendants" are used only for the purposes of simplicity because the parties have aligned themselves in this manner. We recognize that not all factual allegations pertain to all defendants encompassed within these terms. We do not believe, however, that reciting the separate distinctions among the parties as aligned is necessary to the disposition of the appeal, except where noted.

In September 1991, Harkinson initiated negotiations for lease space with the Crow Defendants on behalf of the Hunt Defendants. Richard Strader, a lawyer, was the leasing agent for a building on LaReunion Parkway in Dallas managed by Trammell Crow Dallas Industrial. In the process of negotiating with Strader, Harkinson gave Strader a copy of his exclusive agency agreement. Harkinson stated, both in his deposition and by affidavit, that Strader told him an outside broker who brought a tenant to the LaReunion building would receive a four and one-half percent commission and the building management company would receive a two and one-quarter percent commission. Harkinson further said that he agreed to accept a four and one-half percent commission and, as a result, Strader sent him a form commission agreement. The form agreement was entitled "Commission Agreement Between Owner and Jeff Harkinson." "Owner" was defined as Trammel Crow Company No. 60 and Petula Associates, Ltd.

Harkinson did not sign the commission agreement as sent. Instead, Harkinson revised the form to reflect what he claimed to be the oral agreement reached with Strader. The named parties to the agreement, however, remained the same. Harkinson signed the revised agreement and returned it to Strader. Harkinson stated he asked Strader on several occasions when the completely signed commission agreement would be returned to him. According to Harkinson, on each occasion Strader expressly told him there was no problem with the revised agreement and his supervisor, Thomas Leiser, would sign it and return it to him as soon as possible. Harkinson continued to work on the lease negotiations, conferring with Hunt Products, and submitting to Strader a written lease proposal.

In late October, Dan Patterson, president of Hunt Products, contacted Jim Massey, a former Trammell Crow broker. According to Patterson, he called Massey to explore with him whether Massey thought a reduction in the commission associated with the proposed lease would result in a reduced rental rate. Following his conversation with Patterson, Massey called Leiser at Trammell Crow Dallas Industrial to determine whether Hunt Products could obtain a lower rental rate for the proposed space if Harkinson's commission were less.

Strader said Leiser suggested that he call Patterson directly to discuss Harkinson's commission. He did so. Strader said that Patterson asked him whether a lower commission would result in a lower rental rate for Hunt Products. Strader answered, "Yes." Patterson also asked if the Crow Defendants had signed a commission agreement with Harkinson, and Strader replied they had not. In the conversation, Strader suggested to Patterson that he thought a $30,000 commission to Harkinson would be fair based on his estimate of the time Harkinson spent on the lease negotiations. A proposed lease agreement was drafted with a lower rental rate. The lower rental rate was based, in part, on savings associated with a reduced commission to Harkinson. According to Harkinson, he was unaware of the discussions leading up to the new proposal.

In early November, Harkinson received the new proposal. The accompanying letter signed by Strader stated the reduced rent resulted from lower construction costs and "other savings." Shortly after receiving the new proposal, Harkinson learned the "other savings" included a $30,000 commission to him instead of a commission calculated on four and one-half percent of the value of the lease. When Harkinson confronted the Hunt and Crow Defendants about the reduced commission, he was told bluntly that he should accept the lower amount because the Hunt Defendants intended to lease the building and the $30,000 was a take-it-or-leave-it proposition.

Later in November, Leiser sent Harkinson a written offer for a $30,000 commission. The letter stated the Crow Defendants had been advised by their attorneys that Harkinson was not entitled to any commission on the Hunt lease under the Texas Real Estate License Act. The letter further stated that if the $30,000 was unacceptable, the Crow Defendants would not continue their lease negotiations with Harkinson.

A few days later, Hunt Products signed a ten-year lease for the LaReunion building,

agreeing to pay over the term of the lease $7,700,000 in rent. Trammell Crow Dallas Industrial collected a six percent commission of $462,000. Strader personally received $103,950 as his part of this commission. The $30,000 offered to Harkinson represented less than ten percent of the amount he would have received if a four and one-half percent commission based upon the final lease had been paid to him.

Harkinson refused to accept the $30,000 commission. He filed suit alleging the following causes of action: breach of an oral commission agreement; fraud; tortious interference with his exclusive agency agreement; breach of his exclusive agency agreement; tortious interference with his oral agreement for a four and one-half percent commission; tortious interference with prospective business relations; fraud in a real estate transaction; civil conspiracy; and breach of the duty of good faith and fair dealing. Harkinson further sought a declaratory judgment that he had an enforceable commission agreement. The Crow Defendants filed a motion for summary judgment asserting that all causes of action filed against them were barred by section 20(b) of RELA or, in the alternative, that all causes of action asserted failed as a matter of law because the claims had no basis in fact. The Hunt Defendants moved for summary judgment solely on the ground that Harkinson's causes of action against them were barred by section 20(b) of RELA. The trial court signed a final summary judgment that Harkinson's claims against all defendants were barred as a matter of law. This appeal ensued.

## DISCUSSION

In reviewing a trial court's summary judgment, we apply well known standards. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The trial court granted summary judgment only on the asserted ground that Harkinson's claims were barred under section 20(b) of the Texas Real Estate License Act. Therefore, we review the summary judgment to determine whether the trial court erred in rendering summary judgment on that specific ground.

*See State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

In his first point of error, Harkinson contends the trial court erred in dismissing his causes of action for tortious interference and conspiracy because section 20(b) of RELA does not bar these claims. Both the Crow Defendants and the Hunt Defendants respond that section 20(b) bars all actions for the recovery of real estate commissions, including those sounding in tort, unless there is a signed agreement by the party to be charged. Section 20(b) states:

> An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by him to sign it.

TEX.REV.CIV.STAT.ANN. art. 6573a, § 20(b) (Vernon Supp.1995).

It is undisputed that Harkinson has no signed agreement for the direct payment of a commission. The exclusive agency agreement provides that Harkinson will look solely to the landlord for his fee. Harkinson alleges he has an oral agreement with the Crow Defendants, as the landlord, for the payment of a four and one-half percent commission. These agreements appear to fall within the prohibitions of section 20(b). Harkinson argues, however, that under *Clements v. Withers,* 437 S.W.2d 818 (Tex.1969), the unenforceability of an agreement under section 20(b) is not a defense to a claim for tortious interference or conspiracy to interfere tortiously. We agree.

In *Clements,* the Texas Supreme Court held that RELA requires what the statute of frauds and the statute of conveyances requires; that is, written proof of an agreement in certain cases before performance can be enforced. *Id.* at 820–21. The court went on to hold that this is as far as RELA goes. The statute does not give third parties the right to interfere with oral contracts between other parties that may be unenforceable for failure to meet the statute's writing requirement. *See id.* at 821.

Harkinson alleges tortious interference with both contracts at issue here: the alleged oral commission agreement between Harkinson and the Crow Defendants and the written exclusive agency agreement between Harkinson and the Hunt Defendants. He claims the Hunt Defendants interfered with his oral agreement with the Crow Defendants and the Crow Defendants interfered with his written agreement with the Hunt Defendants. Harkinson further alleges that the Hunt Defendants tortiously interfered with his prospective business relations with the Crow Defendants.

■ Although Harkinson's oral contract with the Crow Defendants does not meet the requirements of section 20(b), this deficiency does not render the contract void or illegal, nor is there any public policy opposing its performance. *Id.; see Wyche v. Noah,* 288 S.W.2d 866, 867 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.).[4] The contract is merely unenforceable between the two contracting parties. Section 20(b), therefore, does not bar Harkinson's cause of action against the Hunt Defendants for tortious interference with his alleged oral contract with the Crow Defendants.

■ The exclusive agency agreement, although in writing, does not provide for the direct payment of a commission by the Hunt Defendants. To be enforceable as a commission agreement under section 20(b), the agreement would have to meet three requirements: (1) it must be signed by the person to be charged with the commission; (2) it must contain a promise that a definite commission be paid or refer to a written commission schedule; and (3) it must state the name of the broker to whom the commission is to be paid. *See LA & N Interests, Inc. v. Fish,* 864 S.W.2d 745, 749–50 (Tex.App.—Houston [14th Dist.] 1993, no writ). Because the exclusive agency agreement does not meet the second requirement, it is unenforceable as a commission agreement between Harkinson and the Hunt Defendants. But as was the

case with the alleged oral contract, such unenforceability is not a defense to a claim of tortious interference with the agreement by a third party.

In *LA & N Interests,* the court dealt with an exclusive agency agreement similar to the one at issue here. The plaintiff in *LA & N Interests* sued an independent broker for tortious interference with the agreement. *Id.* at 747. The court held, as in *Clements,* that the failure of the agreement to meet the requirements of RELA did not render the agreement illegal and that RELA was not a defense to the claim for tortious interference with the agreement. *Id.* at 751. Furthermore, the court reasoned that even though the agreement did not provide for the payment of commissions, the agreement authorized the plaintiff as the exclusive agent to negotiate a commission for itself. The court concluded this contract right was subject to tortious interference. *Id.* at 752. Moreover, the court concluded tort damages could arise from a breach of the agreement if the breach deprived the plaintiff of the opportunity to use its exclusive agent status to negotiate a commission. *Id.* We similarly conclude Harkinson's cause of action against the Crow Defendants for tortious interference with the exclusive agency agreement is not barred by section 20(b).

Both the Crow Defendants and the Hunt Defendants argue that *Clements* is distinguishable on several different grounds. They first argue that *Clements* establishes a threshold writing requirement before a broker can avoid the absolute bar on claims described by section 20(b). Nothing in *Clements* establishes a "threshold" writing requirement. Either an agreement meets the requirements of RELA or it does not. The failure of an agreement to meet the statute's writing requirement is irrelevant to the availability of a cause of action for tortious interference.

Second, they contend that *Clements* addressed the applicability of the "general"

---

**4.** *Compare Travel Masters, Inc. v. Star Tours, Inc.,* 827 S.W.2d 830 (Tex.1991). In *Travel Masters,* the court held that a party could not recover damages for tortious interference with an unenforceable covenant not to compete. *Id.* at 833.

The court, in contrast to *Clements,* specifically pointed out that the covenant not to compete was an unreasonable restraint of trade and unenforceable on public policy grounds. *Id.*

statute of frauds rather than RELA. *Clements*, however, is clearly decided under RELA. *See Clements*, 437 S.W.2d at 820. The court mentions the statute of frauds only for purposes of comparison and to declare that both RELA and the statute of frauds have the same requirements. Indeed, section 20(b) adds to the coverage of the statute of frauds by making the general statute specifically applicable to commission agreements. *See Hutchings v. Slemons*, 174 S.W.2d 487, 490 (Tex.1943) (discussing section 28 of RELA, predecessor to section 20(b)). It is clear from the context of the opinion that the court's references to "this statute" are references to section 20(b) of RELA and not to the statute of frauds.

Third, the Crow Defendants argue that both *Clements* and *LA & N Interests* support their argument that a broker is not entitled to recover from an owner-lessor under a theory of tortious interference where the requirements of section 20(b) have not been met. The Crow Defendants misstate the holdings in these cases. Under *Clements* and *LA & N Interests*, a broker cannot recover against a party who agrees to pay a commission if the agreement does not meet the requirements of section 20(b). As stated above, however, the inability to recover from a party to an agreement does not affect the ability to recover from third parties who tortiously interfere with the agreement. The Crow Defendants are third parties in relation to the exclusive agency agreement and the Hunt Defendants are third parties in relation to the alleged oral commission agreement. Section 20(b) does not bar recovery against the defendants for tortious interference with contracts to which they were not parties.

█ Fourth, the Crow Defendants argue that Harkinson's tort causes of action are barred because the claims sound in contract rather than tort. We note this argument was not presented to the trial court as grounds for summary judgment. Therefore, we do not address it on appeal. *See Hall v. Harris County Water Control & Improvement Dist. No. 50*, 683 S.W.2d 863, 867 (Tex. App.—Houston [14th Dist.] 1984, no writ).

Finally, all defendants argue that this Court's decision in *Cissne v. Robertson*, 782 S.W.2d 912 (Tex.App.—Dallas 1989, writ denied), is controlling in this case. Although *Cissne* is controlling with respect to certain actions for the recovery of a commission, we conclude it is not controlling here. In *Cissne*, this Court held that a party seeking to recover a commission could not avoid the requirements of RELA by alleging causes of action sounding in tort such as fraud, tortious interference, and civil conspiracy. But *Cissne* is distinguishable when applied to this case.

First, both plaintiffs in *Cissne* stood in a different posture than does Harkinson. One plaintiff in *Cissne* had no agreement for the payment of a commission, written or otherwise. Based upon the complete absence of an agreement, this Court held that it was unnecessary to consider the application of section 20(b) as a defense. *Id.* at 917. The other plaintiff in *Cissne* was not a licensed real estate broker but only a real estate salesman. Therefore, any contract for payment of a commission to him would have been not only unenforceable, but also illegal. *See LA & N Interests*, 864 S.W.2d at 751. Section 20(b) was not implicated with respect to this plaintiff because his claim was barred by section 1(d) of RELA.

Next, the tortious interference claim at issue in *Cissne* was against the party who had contracted to pay the commission, not a third party to the agreement. Third parties to a commission contract are not provided the same protections under RELA. *See id.* Due to these critical differences, the holdings in *Cissne* do not support dismissal of Harkinson's causes of action for tortious interference.

█ Furthermore, we conclude that section 20(b) does not bar Harkinson's cause of action against the Hunt Defendants for tortious interference with Harkinson's prospective business relations with the Crow Defendants. Nothing in section 20(b) bars such a cause of action by a licensed real estate broker, and neither the Crow Defendants nor the Hunt Defendants have cited any case which has so held. By its terms, section 20(b) relates only to the necessity of a written contract setting forth an existing promise

to pay a commission if that agreement is to be enforced against the promisor. Section 20(b) does not address in any way causes of action for tortious interference with prospective agreements or other business relations.

■■■ In addition to suing the Crow Defendants and the Hunt Defendants separately for tortious interference, Harkinson has alleged the Crow Defendants and Hunt Defendants conspired with one another to interfere with both his exclusive agency agreement and the alleged oral agreement. A cause of action for conspiracy lies when two or more parties conspire to interfere with a contract. *See Boyles v. Thompson,* 585 S.W.2d 821, 836 (Tex.Civ.App.—Fort Worth 1979, no writ). This includes cases where a third party conspires with a party to a contract to interfere with that contract. *See id.* Because we conclude that RELA does not bar Harkinson's causes of action for tortious interference, we also conclude that RELA does not bar Harkinson's claim for conspiracy to interfere tortiously. We are mindful of our holding in *Cook v. City of Plano,* 656 S.W.2d 607, 608 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), in which we stated that a plaintiff could not avoid the writing requirement of RELA by alleging causes of action such as conspiracy. But the authority relied on in *Cook* for that statement dealt only with conspiracy to defraud. *See id.* Moreover, in *Cook,* as in *Cissne,* the only defendant from whom recovery of the commission was sought was the party to the contract in question. Thus, the viability of a claim for conspiracy to interfere tortiously was not addressed. Based upon the foregoing, we sustain Harkinson's first point of error.

We next address Harkinson's third point of error. In this point of error, Harkinson contends the trial court erred in dismissing his contract claims because the defendants breached binding promises to him. We conclude otherwise.

■■■ The binding promise alleged between Harkinson and the Hunt Defendants is the exclusive agency agreement. Harkinson contends that due to the Hunt Defendants' breach of this agreement, he has suffered damages in the amount of the commission he would have been paid. This identical point was addressed and overruled in *LA & N Interests.* As already stated, *LA & N Interests* concerns the ability of a broker to recover a commission based upon an exclusive agency agreement similar to the one at issue here. The agency agreement in that case stated that the buyer would have no obligation to pay the plaintiff's fee. Based upon this language, the court held that a broker could not recover a commission based upon the breach of an agreement that would not support recovery of a commission had it been performed. *LA & N Interests,* 864 S.W.2d at 750. To recover against a party for breach of a commission agreement, strict compliance with RELA is required.

Harkinson argues that *LA & N Interests* is distinguishable on this point because the exclusive agency agreement states that there will be no "direct" charge to Hunt Products for Harkinson's services. This is a distinction without a difference. The agreement states that Harkinson will look solely to the landlord for his fee. Nothing in the agreement provides for the payment of a commission. We overrule the portion of Harkinson's third point of error complaining of the trial court's dismissal of his cause action for breach of the exclusive agency agreement.

The binding promise alleged between Harkinson and the Crow Defendants is the oral commission agreement. Harkinson does not contend this agreement meets the requirements of section 20(b). Rather, Harkinson argues that section 20(b) does not bar his cause of action to enforce this agreement because of the doctrine of promissory estoppel. The Crow Defendants do not argue that the summary judgment evidence overcomes Harkinson's pleading of promissory estoppel. Instead, the Crow Defendants respond that promissory estoppel, although an exception to the statute of frauds found in section 26.01 of the Texas Business and Commerce Code, is not an exception to section 20(b) of RELA. In effect, they argue that promissory estoppel cannot be applied to overcome the requirements of section 20(b). We must answer, therefore, the legal question of whether the doctrine of promissory estoppel, as generally recognized in Texas, may lift section 20(b)'s bar to a licensed real estate broker's

cause of action for enforcement of an oral commission agreement.

Texas has long recognized that the bar of the general statute of frauds may be removed in circumstances where a promise is made to sign an agreement which, when signed, would comply with the requirements of the statute. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972); *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889, 896 (Tex.1969). Section 20(b) is considered to be the statute of frauds within RELA. *See Brice v. Eastin*, 691 S.W.2d 54, 57 (Tex.App.—San Antonio 1985, no writ). Because the wording and protections afforded by section 20(b) are substantially the same as the statute of frauds, many cases use the terms interchangeably. Indeed, courts attempt to interpret both statutes consistently. *See Boyert v. Tauber*, 834 S.W.2d 60, 63 n. 2 (Tex.1992).

For example, in *Carmack v. Beltway Development Co.*, 701 S.W.2d 37, 39 (Tex.App.—Dallas 1985, no writ), this Court held that section 20(b) is a legislative extension of the statute of frauds. Because section 20(b) is an extension of the statute of frauds, this Court further held that the application of a statute of frauds exception to section 20(b) would be proper if the application were consistent with the rationale of the exception as it was applied to the statute of frauds. *Id.* at 40; *see Boyert*, 834 S.W.2d at 63–64. *Carmack* held the application of a statute of frauds exception to be particularly appropriate where the use of section 20(b) to deny liability for a commission would perpetuate fraud rather than prevent it. *Carmack*, 701 S.W.2d at 41. While the decision in *Carmack* is limited to the application of the part-performance doctrine, this Court nevertheless recognized that an established exception to the statute of frauds could be an exception to section 20(b) of RELA. *See also Boyert*, 834 S.W.2d at 63–64.

■ But another well established exception to the statute of frauds has been held not to be an exception to the RELA statute of frauds. In particular, in *Landis v. W.H. Fuqua, Inc.*, 159 S.W.2d 228, 231 (Tex.Civ. App.—Amarillo 1942, writ ref'd), the court held that the executed contract exception to the statute of frauds was not an exception under the predecessor statute to section 20(b). For the following reasons, we likewise conclude that promissory estoppel, although an exception to the general statute of frauds, is not an exception to section 20(b) of RELA.

■ Promissory estoppel operates to preclude a defense based on the statute of frauds in the limited circumstance where:

(1) a party promises to sign an agreement;

(2) the promising party reasonably should have expected its promise would induce the other party to take action or forbear from taking action;

(3) the promise made induced action or forbearance in reliance on the promise;

(4) the action taken or forbearance made was of a definite and substantial character; and

(5) injustice to the party to whom the promise was made can be avoided only by enforcing the promise.

*"Moore" Burger*, 492 S.W.2d at 938. In a conventional case not involving RELA, each of the elements of promissory estoppel normally would be a fact issue to be resolved in the trial court. *See id.* at 939. In a case under RELA, however, the question becomes whether one or more of these elements is resolved as a *matter of law* when a licensed real estate broker sues to enforce an oral commission agreement based on the allegation that promissory estoppel prevents the defendant from urging a defensive plea in bar based on section 20(b). If so, then section 20(b) is free from any application of the doctrine of promissory estoppel, and such a cause of action cannot be maintained in avoidance of the requirements of section 20(b). We conclude at least one element of promissory estoppel is resolved as a matter of law against a licensed real estate broker.

When the legislature enacted RELA, it exercised this State's police power to regulate a private business that affects the public interest. *Hall v. Hard*, 160 Tex. 565, 571, 335 S.W.2d 584, 589 (1960). RELA specifically defines the activities of a real estate broker. TEX.REV.CIV.STAT.ANN. art. 6573a, §§ 2(2) & (3) (Vernon Supp.1995). The Act imposes specific licensing requirements on

persons who desire to act as real estate brokers and makes the failure to obtain a license unlawful. *Id.* § 1(b). The Act's licensing requirements include a determination of a person's competency to act as a broker, which competency is established only by the successful completion of a prescribed written examination. *Id.* § 6(b). The Act prescribes the subjects to be included in the examination and mandates the scope of the examination to be sufficient "to determine that a person is competent to act as a real estate broker or salesman in a manner to protect the interest of the public." *Id.* § 7(a). In furtherance of this determination, the Act requires the examination to be comprehensive, including testing an applicant on "licensing of a real estate broker," the "law of agency," "contracts," "real estate professionalism and ethics," "the authority of an agent," "listing procedures," and "listing and buying representation procedures." *Id.* § 7.

In effect, before a person may receive a license to be a real estate broker in Texas, he must demonstrate knowledge of the law that will govern his involvement in the very transactions that will generate his commissions. Unquestionably and necessarily, part of the law that he must be knowledgeable about is RELA itself, including section 20(b). Thus, as a matter of law, a licensed real estate broker, as a prerequisite to obtaining a license, must have knowledge of the provisions of section 20(b) that prohibit him from bringing an action in a court of this State for the recovery of a real estate commission *unless* the promise or agreement on which the action is brought is in writing and signed by the person to be charged.

Given this, we conclude that a licensed real estate broker cannot be induced to take action or forbear from taking action in *reliance* on an oral promise to sign a commission agreement. A licensed real estate broker simply cannot reasonably rely on such a promise when he knows that an agreement to pay a commission, unless actually reduced to writing and signed by the party to be charged, is by express statute unenforceable in Texas. In short, a licensed real estate broker attempting to invoke the doctrine of promissory estoppel cannot show he acted or forbore from acting in reliance on anything less than a written commission agreement. Thus, in every case where a licensed real estate broker urges that the doctrine of promissory estoppel permits him to sue on an oral commission agreement, an essential element underpinning his claim cannot be proved as a matter of law.

■ Our conclusion comports with the purpose of RELA, which is intended to insure the fidelity and honesty of real estate brokers in their dealings with the public. *See LA & N Interests,* 864 S.W.2d at 751. Under RELA, a licensed real estate broker must be competent to act "in a manner to protect the interest of the public." Tex.Rev. Civ.Stat.Ann. art. 6573a, § 7(a) (Vernon Supp.1995). The purpose of section 20(b) is to prevent fraud by those who would misrepresent oral promises by requiring commission agreements to be in writing. *See Clements,* 437 S.W.2d at 821. Allowing a licensed real estate broker to employ promissory estoppel would effectively vitiate the purpose of RELA, and section 20(b) in particular, by giving the broker a vehicle by which to misrepresent oral promises. By making such a claim, the broker would not be acting in the interest of the public but acting in his own interest, contrary to the requirements of RELA. We overrule, therefore, that portion of Harkinson's third point of error complaining of the trial court's dismissing his cause of action against the Crow Defendants for breach of the alleged oral commission agreement based on promissory estoppel.

■ Harkinson further argues in his third point of error that his oral commission agreement with the Crow Defendants is an agreement to share commissions and, as such, stands outside the requirements of RELA. *See Warren v. White,* 143 Tex. 407, 411, 185 S.W.2d 718, 720 (1945). The Crow Defendants respond that the facts of this case are distinguishable from those in *Warren* because the oral agreement alleged by Harkinson is for the payment of a commission by the landlord to the broker rather than a "sharing" of a commission between brokers. We agree.

In *Warren,* a licensed real estate broker orally agreed to share his commission with a

second broker if the second broker produced a buyer. *Id.* at 408, 185 S.W.2d at 718. The second broker produced a buyer, and the first broker refused to divide his commission. *Id.* The court held that RELA was intended to protect property owners against unfounded claims of brokers but it was not intended to apply to agreements between brokers to share commissions. *Id.* at 411, 185 S.W.2d at 719.

In his summary judgment affidavit, Harkinson stated Strader orally promised him that the landlord would pay him a four and one-half percent commission and the building management company, as agent, would receive a two and one-quarter percent commission. Both the form commission agreement sent to Harkinson and the revised version created by Harkinson state the commission agreement is between Harkinson and Trammell Crow Company No. 60 and Petula Associates, Ltd. as "owners," not between Harkinson and Trammell Crow Dallas Industrial. Strader's alleged promise was not one to share Trammel Crow Dallas Industrial's commission; it was a promise that the landlord would pay Harkinson a commission as a broker involved in the transaction. Therefore, Strader's alleged promise was not an agreement to share a commission as contemplated by *Warren.* We overrule the remaining portion of Harkinson's third point of error.

In his second point of error, Harkinson argues the trial court erred in dismissing his fraud claims because the summary judgment evidence proves the defendants falsely promised to carry out their agreements. Unlike Harkinson's claims for tortious interference, these tort claims are alleged as a means of specifically enforcing the alleged agreements under which Harkinson claims he is entitled to a commission. Harkinson, therefore, is using fraud claims in an attempt to circumvent section 20(b) of RELA. *See Cook,* 656 S.W.2d at 608. We conclude that Harkinson's fraud claims are barred by section 20(b). We overrule Harkinson's second point of error.

In his fourth point of error, Harkinson generally contends the trial court erred in granting summary judgment for the defendants. Harkinson does not support this point of error with any additional facts or argument. We sustain, therefore, this point only to the extent set forth above; otherwise we overrule Harkinson's fourth point of error.

We note that Harkinson does not directly challenge the trial court's summary judgment with respect to his declaratory judgment claim. However, because this claim is subsumed within Harkinson's claim based on promissory estoppel, we will affirm the trial court's summary judgment on the declaratory judgment claim to the same extent as the claim based on promissory estoppel. We also note that Harkinson does not challenge the trial court's granting of summary judgment with respect to his claim for breach of the duty of good faith and fair dealing. This claim is not subsumed within any of Harkinson's other claims and no argument is provided with respect to the propriety of the summary judgment on the breach of the duty of good faith and fair dealing. Therefore, we conclude the summary judgment must stand with respect to that claim.

We reverse the trial court's summary judgment with respect to Harkinson's claims for: (1) tortious interference with his alleged oral agreement; (2) tortious interference with the exclusive agency agreement; (3) tortious interference with his prospective business relations with the Crow Defendants; and (4) civil conspiracy to interfere tortiously with his alleged oral commission agreement and exclusive agency agreement. We remand those claims to the trial court for further proceedings. We affirm the trial court's summary judgment in all other respects.