Eugene C. CARMACK, Appellant,

v.

BELTWAY DEVELOPMENT COMPANY, Appellee.

No. 05-84-01271-CV.

Court of Appeals of Texas, Dallas.

Nov. 7, 1985.

Rehearing Denied Dec. 18, 1985.

Howard V. Tygrett, Jr., Troy C. Vinson, Tygrett & Walker, Dallas, for appellant.

Susan M. Newell, Alvin H. Badger, Johnson, Bromberg & Leeds, Dallas, for appellee.

Before GUITTARD, C.J., and SPARLING and HUGHES,[1] JJ.

GUITTARD, Chief Justice.

Beltway Development Company, a real estate broker, sued Eugene C. Carmack for commissions due under a written commission agreement. The trial court rendered judgment for Beltway. On this appeal Carmack contends that the commission agreement fails to contain a description of the property sufficient to comply with the statute of frauds applicable to real estate commission agreements, TEX.REV.CIV.STAT. ANN. art. 6573a, § 20(b) (Vernon Supp. 1985). We affirm on the ground that the doctrine of part performance renders the section 20(b) statute of frauds inapplicable.

Carmack brings eleven points of error, all based on the contention that the trial court erred in finding that the documentary evidence provided a sufficient description of the leased premises as required by section 20(b) of the Real Estate License Act. Beltway argues that section 20(b) does not apply or, in the alternative, that the documentary evidence does provide a sufficient property description. We do not address the sufficiency of the property description because we hold section 20(b) does not apply.

In October 1982, Carmack and Beltway signed a written exclusive listing agreement in which Beltway agreed to find a "high quality restaurant" tenant to lease property owned by Carmack in Dallas. Beltway was to receive a six-percent com-

---

1. The Honorable W.A. Hughes, Justice, Second Court of Appeals, Fort Worth, retired, sitting by assignment.

mission for his services "due one-half upon execution and the balance due 365 days thereafter." The listing agreement described the property to be leased as "2710 Boll Street" in Dallas County, Texas, and recited that a legal description of the property was attached. No legal description was ever attached. At the time the listing agreement was executed, Carmack owned four contiguous lots on Boll Street: one containing a two-story building with the address 2710 Boll Street, two adjacent vacant lots, and a fourth lot containing a single-story building.

Beltway subsequently produced a tenant, Bugatti Incorporated, suitable to Carmack. On or about December 7, 1982, Carmack and Bugatti executed a lease purporting to cover three of the four Boll Street lots. These leased lots included the two vacant lots, which are not identified by metes and bounds or by lot numbers, and another lot described as:

> a store unit of approximately 4,868 square feet, such store unit being outlined in red on the plan attached hereto as Exhibit A, being generally described as 2708–2714 Boll Street, Dallas, Texas, as more fully set forth in Volume 183, Page 482 of Map and Plat Records of Dallas County, Texas.

"Exhibit A" contains an outline of a two-story building described as an "available restaurant location" of approximately 4,868 square feet on "Boll Street." The evidence shows that Page 482 of Volume 183 of the Map and Plat Records does not exist. The lease requires that the property "shall be used as a Restaurant." The lease mentions the "Landlord's Broker" and refers to a "lease attachment," which is not otherwise identified.

At approximately the time Carmack executed the lease, he signed a written commission agreement with Beltway. In this agreement Carmack expressly acknowledges Beltway's services in securing Bugatti as a tenant and his obligation to pay the six-percent commission based on the rentals provided in the lease dated December 7, 1982, between Carmack and Bugatti.

It describes the leased premises as "4,868 square feet of retail space" on "Boll Street in Dallas, Texas." It also mentions that the use of the property is to be "restaurant use." At the execution of the lease or shortly thereafter, Carmack paid Beltway $12,105, being approximately one-half of the total commission due as calculated from the rentals under the primary term of the lease.

Bugatti occupied the two-story building on Boll Street from early January until late December 1983, when the building was destroyed by fire. During its occupancy, Bugatti paid rents to Carmack and paved the adjacent vacant lots. Carmack terminated the lease with Bugatti on December 31, 1983, and failed to pay the second half of the commission due Beltway.

■ Section 20(b) requires a written memorandum for enforcement of a "commission for the sale or purchase of real estate." A lease transaction is a "sale" within the meaning of the statute. *Moser Co. v. Awalt Ind. Properties, Inc.*, 584 S.W.2d 902, 906 (Tex.Civ.App.—Amarillo 1979, no writ).

Because the wording of section 20(b) is substantially the same as the wording of the Statute of Frauds concerning sales of real estate, TEX.BUS. & COM.CODE ANN. § 26.01 (Vernon 1968), the established rules governing the construction of the Statute of Frauds have been applied in determining the sufficiency of the description of the land in the written memorandum required by section 20(b). *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex.1968); *Pickett v. Bishop*, 148 Tex. 207, 223 S.W.2d 222, 223 (1949); *West v. Barnes*, 351 S.W.2d 615, 618 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.). In *Owen* the court, applying the rules for construing the Statute of Frauds, held that section 20(b) required the written memorandum to furnish within itself or by reference to another writing the means or data by which the particular land could be identified. *Owen*, 433 S.W.2d at 166. In light of these cases, we view section 20(b) as a legislative exten-

sion of the Statute of Frauds into the area of real-estate-commission agreements.

■ The Statute of Frauds is subject to a well-recognized exception under the part-performance doctrine. Under this exception contracts that have been partly performed, but do not meet the requirements of the Statute of Frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud in the sense that the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit. *Texas Co. v. Burkett*, 117 Tex. 16, 296 S.W. 273, 279 (1927); *Matthewson v. Fluhman*, 41 S.W.2d 204, 206 (Tex.Comm'n App.1931, jdgmt. adopted); *Davis v. Campbell*, 524 S.W.2d 790, 793 (Tex.Civ.App.—Dallas 1975, no writ).

■ A purchaser of land may bring an oral contract within this rule by showing: (1) payment of the consideration, (2) possession of the property, and (3) valuable improvements or other facts that would make the transaction a fraud on the purchaser if the contract is not enforced. *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921). Likewise, a vendor may be entitled to enforce an oral contract if he shows performance of the contract by delivery of possession to the purchaser and a detrimental change of position for which the vendor has no adequate remedy. *Burkett*, 296 S.W.2 at 279; *Morris v. Gaines*, 82 Tex. 255, 17 S.W. 538, 539 (1891); *cf. Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267, 270 (1961) (oral agreement to make mutual wills); *Newsom v. Newsom*, 378 S.W.2d 842, 844–45 (Tex.1964) (lessor permitted to recover rent stipulated in oral lease for more than one year). When one party fully performs a contract, the Statute of Frauds may be unavailable to the other party if he knowingly accepts the benefits and partly performs. *Estate of Kaiser v. Gifford*, 692 S.W.2d 525, 526 (Tex.App.—Houston [1st Dist.] 1985, ref. n.r.e.); *Le Sage v. Dunaway*, 195 S.W.2d 729, 731 (Tex.Civ.App.—Waco 1946, no writ); *Calla-*

*han v. Walsh*, 49 S.W.2d 945, 948 (Tex.Civ. App.—San Antonio 1932, writ ref'd).

A common rationale underlies each application of the part-performance exception. When there is strong evidence establishing the existence of an agreement and its terms, and the party relying on the agreement suffers a detriment for which he has no adequate remedy while the other party, if permitted to plead the statute, would reap an unearned benefit, then to apply the Statute of Frauds and declare the agreement unenforceable would be to permit use of the Statute of Frauds to perpetuate fraud. *See, e.g., Hooks*, 229 S.W. at 1116–17.

■ Because section 20(b) is an extension of the Statute of Frauds, application of the part-performance exception to section 20(b) is proper if its application is consistent with the rationale common to applications of the part-performance exception to the Statute of Frauds. We conclude that application of the part-performance exception here is consistent with this rationale. Documentary evidence exists establishing the existence and terms of the agreement between Carmack and Beltway. The commission agreement itself establishes: (1) Beltway fully performed its obligation by procuring Bugatti as a tenant for property owned by Carmack on Boll Street, (2) Carmack acknowledged his reciprocal obligation to pay the commission, and (3) the exact amount of commission is determined by reference to the rentals provided in the lease.

Beltway sustained a substantial detriment in that it was not fully compensated for its services as the written commission agreement provides. It has no other adequate remedy because when section 20(b) bars recovery of a commission, the broker cannot recover for the same services on an implied contract or quasi-contract theory or on the basis of quantum meruit. *Sherman v. Bruton*, 497 S.W.2d 316, 321 (Tex.Civ. App.—Dallas 1973, no writ); *Taylor v. Sellers*, 348 S.W.2d 99, 101 (Tex.Civ.App.—Fort Worth 1961, no writ).

Carmack, on the other hand, benefited from Beltway's services in that he secured a tenant for his property and received substantial rental income. Also, he had the benefit of Bugatti's substantial improvements by paving the two vacant lots. Retention of the benefits of the commission agreement without payment of the agreed consideration amounts to a virtual fraud, which justifies enforcement of the commission agreement under the doctrine of part-performance.

The only term of the agreement arguably not supplied by the commission agreement and by its reference to the lease was the precise identification of the property leased. Under these circumstances application of section 20(b) could protect against only one danger—if Beltway had been employed to secure a tenant for some other Boll Street property owned by Carmack rather than for the property leased. Here, however, the commission agreement expressly acknowledges liability for a commission for procuring the lease to Bugatti. It also describes the property in some terms identical to those in the lease and mentions the same property use, although the boundaries of the two vacant lots may not have been precisely defined. Thus, documentary evidence exists establishing that the property leased by Carmack to Bugatti was the same property for which Beltway was employed to secure a tenant.

We recognize that the lease did not contain a sufficient description of all the property leased, although it was quite specific concerning that part of the property occupied by the building. That insufficiency, however, creates no uncertainty concerning Carmack's acceptance of Beltway's services or the amount of the commission due. The insufficiency of the description in the lease did not render the lease unenforceable as between the lessor and lessee, since the lessee took possession, paid the rentals specified, and made valuable improvements. *Newsom*, 378 S.W.2d at 844–45. The only materiality of the insufficiency of the description in the lease concerns its adequacy to supply a proper description for the commission agreement by reason of the reference in that document. That technical insufficiency, however, should not, in equity, defeat Beltway's right to its commission because both Carmack's acceptance of Beltway's services and the amount of Beltway's commission are established by the commission agreement when taken together with the lease, to which it expressly refers. Under these circumstances we hold that the use of section 20(b) to deny liability for the commission would perpetuate fraud rather than prevent it.

We do not hold that a broker's full performance alone is sufficient to take a commission agreement out of section 20(b) because such a construction would nullify the statute. A broker stands in a different position with respect to part performance because he does not take possession or make improvements to property as a purchaser might, nor does he change his position in reliance on the oral or other insufficient contract other than by providing his services. Allowing a broker to recover on the ground of his performance alone would permit enforcement of any commission agreement fully performed by the broker whether or not it complies with section 20(b). This would be in direct opposition to the expressed will of the legislature and would unduly expose the public to fraudulent claims for commissions. *Landis v. Fuqua*, 159 S.W.2d 228, 231 (Tex.Civ.App. —Amarillo 1942, writ ref'd); *see Hooks*, 229 S.W. at 1117. However, we conclude that the doctrine of part performance applies to a broker's agreement under the circumstances shown here.

■ We limit our decision to the holding that under that doctrine a written real-estate-commission agreement that fails to describe the property with precision may be enforced by the broker notwithstanding section 20(b) when: (1) the broker has fully performed, (2) the other party has knowingly accepted the broker's services by completing the transaction arranged by the broker and receiving benefits from that transaction, (3) the other party has acknowledged in writing his obligation for a

commission, and (4) documentary evidence establishes the amount of the commission due.

For the reasons stated we overrule all of Carmack's points of error and affirm the judgment of the trial court.

Affirmed.