**Jos Antonio O'FARRILL AVILA, Appellant,**

v.

**Luisa GONZÁLEZ, Appellee.**

No. 04–97–00234–CV.

Court of Appeals of Texas, San Antonio.

May 6, 1998.

Rehearing Overruled June 11, 1998.

Richard R. Orsinger, San Antonio, William Lewis Sessions, Sessions & Sessions, L.C., San Antonio, for Appellant.

Victoria Valerga, San Antonio, Karl E. Hays, Law Offices of Karl E. Hays, San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

HARDBERGER, Chief Justice.

### INTRODUCTION

Appellant's Motion for Rehearing is granted in part. This court's original opinion and judgment, issued February 27, 1998, are withdrawn and this opinion and judgment are substituted. In our original opinion, we affirmed the trial court's judgment on all points except the assessment of interest on appellate attorneys' fees. Specifically, with regard to the legal and factual sufficiency of the evidence to support the award of attorneys' fees, we held that appellant's points of error were waived. Because preservation of sufficiency points of error is not required in non-jury trials, we modify our opinion on rehearing to consider the merits of those claims relating to attorneys' fees.

This is an appeal from a breach of contract case. The trial judge found that appellant, Jos Antonio O'Farrill Avila (O'Farrill), had breached two contracts with appellee, Louisa González–Chacon (González). The court awarded González $200,000 on the contract claims, plus attorneys' fees and fees for ap-

peal to this court and to the supreme court. We affirm the judgment as modified.

## FACTS

This lawsuit arises from a three-year domestic relationship between the parties, a relationship that has produced a daughter, a corporation, and a tangle of litigation, including a paternity suit, tort claims, contract claims, alter ego claims, and child support claims. Many of the issues have been resolved; some are still pending.

In the case before us, the trial judge was asked to consider the validity and effect of two agreements between the parties: a promise, written and signed by O'Farrill on July 5, 1994, to pay González $5,000 per month, and an agreement between the two regarding the purchase of the home they shared in San Antonio. The trial court determined that both agreements reflected enforceable contracts.

The July 5 document, written and signed by O'Farrill in Mexico City, is a bare promise to make monthly payments to González. The document makes no mention of duration of these payments or of any return promise made by González. The trial court allowed extrinsic evidence on both issues. González testified that, in exchange for the money, she had promised to live with the child in San Antonio and to remain home with her rather than seek employment. As for the duration of the agreement, González admitted that the agreement was silent on the matter, but she testified that her understanding was that O'Farrill did not want his child raised by strangers, and the money therefore was a guarantee that González would remain with the child throughout the formative years, until the child was settled in school. O'Farrill did not appear at trial to controvert this testimony.

The second agreement between the parties was to purchase a home in San Antonio. According to González, she agreed to contribute $60,000 up front for the home, and O'Farrill agreed to make monthly payments on the remaining debt. As proof of this agreement, González offered her own testimony and the loan documents for the home. These papers reflected only the agreement between the purchasers and the loan company. González testified that she performed her part of the agreement fully, but that O'Farrill ceased making mortgage payments after less than two years, when González initiated legal action against him. The bank holding the mortgage on the home has foreclosed on the property. Again, O'Farrill was not present at trial to present controverting testimony.

In eleven points of error, O'Farrill appeals the judgment against him, claiming that (1) there is legally or factually insufficient evidence to support the existence of the two contracts; (2) there is legally or factually insufficient evidence to support the finding that O'Farrill breached the agreements; (3) the trial court erred in admitting parol evidence to prove the contracts and their terms; (4) the trial court erred in upholding the Mexico City agreement despite want of consideration; (5) the evidence is legally or factually insufficient to support the award of $200,000; (6) the trial court erred in failing to make separate findings on each contract claim; (7) the evidence is legally or factually insufficient to support the amount of attorneys' fees awarded; (8) the evidence is legally or factually insufficient to support the amount of attorneys' fees awarded for appeals to this and the supreme court; (9) the trial court erred in awarding attorneys' fees when the plaintiff had not segregated fees for the contract claims from fees incurred on other, unsuccessful, claims between the parties; (10) the trial court erred in assessing interest on appellate attorneys' fees from the date of judgment rather than the date of perfection of the appeal or the date on which application for writ of error is filed; and (11) the trial court abused its discretion in granting the plaintiff judgment against the defendant.

## POINTS OF ERROR ONE–SIX: THE CONTRACT CLAIMS

O'Farrill's first six points of error address the existence and breach of the agreements between the parties. Points of error one and two allege that the evidence is legally or factually insufficient to support a finding that the contracts existed or that they were breached. Points of error three and four

address the admission of parol evidence to show consideration for and the duration of O'Farrill's promise to pay González $5,000 per month. Point of error five alleges that the evidence is legally or factually insufficient to support the damages award.

### Sufficiency Standards of Review

■ We will review fact findings in a bench trial for legal and factual sufficiency of the evidence by the same standards used in reviewing the evidence supporting a jury's verdict. See W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 St. Mary's L.J. 1045, 1145 (1993).

■ Conclusions of law are not binding on an appellate court, which is free to make its own legal conclusions. *Muller v. Nelson Sherrod & Carter*, 563 S.W.2d 697, 701 (Tex. Civ.App.—Fort Worth 1978, no writ). Conclusions of law are reviewable as a matter of law, but not on the grounds of the sufficiency of their supporting evidence. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890 (Tex. 1991).

■ To test the legal sufficiency of evidence supporting a fact finding, this court must view only the evidence supporting the finding and all inferences to be drawn from that evidence. All contrary evidence and inferences must be disregarded. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). A legal sufficiency challenge will be sustained when (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence established conclusively the opposite of a vital fact. *Cecil v. Smith*, 804 S.W.2d 509, 510 n. 2 (Tex.1991).

To test the factual sufficiency of the evidence supporting a fact finding, this court must view and weigh all the evidence and will reverse only if the evidence supporting the finding is so weak that the finding is manifestly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

It is clear, then, that the absence of O'Farrill's testimony on the contracts does not guarantee success for González on appeal. To be legally sufficient, the evidence presented by her must be competent and admissible and support a viable legal theory. The evidence presented, even if uncontroverted, could conceivably fail a factual sufficiency review if sufficiently weak.

### Consideration

■ O'Farrill claims that the promise to pay González $5,000 per month cannot be enforced because it has not been proven as a contract. A contract, O'Farrill correctly asserts, must be supported by consideration, and this agreement recites no consideration. González testified at trial that she gave consideration for O'Farrill's promise: her promise to remain in San Antonio and to stay at home with the couple's daughter. González's testimony, coupled with the fact that she did remain in San Antonio with the child, provides some evidence to support this claim. O'Farrill did not offer any contrary evidence. We do not find González's evidence so weak as to render the result wrong or manifestly unjust result.

O'Farrill counters that this evidence is legally insufficient, because González is barred by the parol evidence rule from introducing extrinsic evidence regarding consideration.

■ When parties have entered a valid agreement that embodies all the terms of that agreement, parol evidence may not be used to show inconsistent prior or contemporaneous agreements. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958). This rule does not preclude enforcement of prior or contemporaneous agreements that are not inconsistent with or do not vary or contradict the express or implied terms of the agreement. *Id.* 317 S.W.2d at 33.

■ The document presented to the trial court is, on its face, no more than a unilateral promise to pay, which is not an enforceable contract. *See Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 409 (Tex.1997).

González argues that extrinsic evidence is allowed to prove that mutual promises were exchanged. We agree. "The rule is that it may in fact be shown [with extrinsic evidence] that consideration exists even if the consideration takes the form of a promise." CALAMARI & PERILLO, CONTRACTS § 3–7(f) (3rd ed.1987). The rationale for this rule is that, without consideration on both sides, the agreement is at best a partial integration, and a showing of consideration would not contradict any of its terms. *Id.*

■ Even if the promises were not mutual at the time of contracting, the parties' performance on the agreement renders the contracts enforceable. The Texas Supreme Court stated in *Hutchings v. Slemons,* 141 Tex. 448, 174 S.W.2d 487 (1943):

> Though a contract be void for lack of mutuality at the time it is made, and while it remains wholly executory, yet, when there has been even a part performance by the party seeking to enforce the same, and in such part performance such party has rendered services or incurred expense contemplated by the parties at the time such contract was made, which confers even a remote benefit on the other party thereto, such benefit will constitute an equitable consideration, and render the entire contract valid and enforceable.

*Hutchings,* 174 S.W.2d at 489.

■ O'Farrill next argues that González's promise is illusory, because she can remain in the United States only at the mercy of the U.S. government. An illusory promise is a promise that fails to bind the promisor, who retains the option of discontinuing performance. *See CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 263 (Tex.App.—Houston [1st Dist.] 1996, no writ). González's promise to O'Farrill does not fall within this definition. While it may be true that the United States government might deport González, this is not relevant to *her* duties under the alleged agreement. She is bound to perform unless performance is rendered impossible.

González's promise to O'Farrill was twofold: she promised to remain in the States *and* she promised to forego pursuing her career to stay home with the couple's daughter. Even if the first promise were illusory, the second is not. She has, so far, performed her part of the agreement, arguably to her detriment.

### Duration

■ O'Farrill argues that the agreement between himself and González is too uncertain to be enforceable. Specifically, O'Farrill complains that the agreement itself contains no specific term of duration for the monthly payments ·and that González's testimony on this issue was inconsistent: her pleadings suggested that the payments were to be for life; at trial she claimed they were to be for ten or fifteen years, or until the child was not so dependent on a parent being at home. O'Farrill asserts that a contract cannot be enforced when one of the parties is unclear on its duration.

The law on certainty of contract terms is anything but certain. It is difficult to derive clear guidelines from the case law. Courts at least pay lip service to the notion that a contract must be reasonably certain to be enforceable. *See Bendalin v. Delgado,* 406 S.W.2d 897, 899 (Tex.1966); *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). A fatal lack of definiteness may concern the time for performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred. *University Nat'l Bank,* 773 S.W.2d at 710.

Courts have also been willing to supply missing terms when necessary to effectuate the purposes of the parties under the agreement. *Lake LBJ Mun. Utility Dist. v. Coulson,* 692 S.W.2d 897, 906 (Tex.App.—Austin 1985), *rev'd on other grounds,* 734 S.W.2d 649 (Tex.1987). The absence of a duration term does not necessarily suggest that the parties did not enter into an enforceable agreement; such incomplete agreements are often enforced. *See id.* (courts "routinely" supply reasonable time for performance when duration term is omitted). When the duration of a contract is not expressly dictated by the agreement, courts will frequently presume that the parties intended the agreement to last for a reasonable time. *Marshall*

*v. Marshall,* 735 S.W.2d 587, 592 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). This is especially true in cases where the agreement contemplates that one party will make substantial expenditures or other investments in accordance with performance. *Clear Lake City Water Auth. v. Clear Lake Utilities Co.,* 549 S.W.2d 385, 391 (Tex.1977).

■ The reasonableness of the implied duration term is determined by "the circumstances in evidence surrounding the situation of the parties and the subject matter under which the contract was executed." *Cheek v. Metzer,* 116 Tex. 356, 291 S.W. 860, 863 (Tex. Comm.App.1927, opinion adopted). When assuming that the parties meant for a contract to last a reasonable time, courts rely upon what would be reasonable in light of the circumstances available to the parties at the time the contract was made. *Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 16 (1957).

Here, the trial court had sufficient evidence that an agreement had been made, especially in light of the parties' performance, full or partial, of that agreement. This agreement is sufficiently certain to be enforced, and the parties' duties are sufficiently detailed, as described by González's testimony.[1] The question, then, is whether the trial judge had sufficient evidence on which to arrive at a reasonable duration of performance, or whether, as O'Farrill suggests, the contract was necessarily terminable at will.

We find that the trial court had evidence of the circumstances at the time this agreement was made. The couple had a baby. González testified that O'Farrill was concerned that the child have a full-time mother. González had a career, and staying home with the child would entail sacrificing that career, at least for awhile. González also testified that the concern about having a full-time mother would naturally lessen when the child entered school. We find that, based on this uncontroverted testimony, the trial court could have arrived at a reasonable duration term.

■ That González testified and pleaded, inconsistently, that the agreement was meant to last for a longer period of time or for her lifetime does not change this outcome. Upon finding an essential term missing, the trial judge, in implying that term, is only to consider what was reasonable to the parties in light of the circumstances at the time the agreement was made, not what the parties may believe is reasonable at the time of trial. González's conflicting testimony on the intended duration of the agreement suggests not that there was no agreement, but that the agreement simply did not include a duration term.

■ There is precedent for disregarding González's testimony on this issue. In *Beago v. Ceres,* 619 S.W.2d 293 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ), the court found that a separation agreement between ex-spouses was to last for a reasonable time, in spite of the appellant's claim that it was of permanent duration. *Beago,* 619 S.W.2d at 295. The court held that the agreement's "intrinsic terms" suggested that it was not to last forever. *Id.* Thus, there is at least some evidence of an implied term of reasonable duration, and the legal sufficiency claim fails. The finding also survives a factual sufficiency claim: González's testimony regarding the circumstances in existence at the time of the agreement was uncontroverted and not so weak as to make the result wrong or unjust.

### Statute of Frauds

■ O'Farrill next contends that both agreements fall within the Statute of Frauds because both, by necessity, could not be performed within one year.[2] TEX. BUS. & COM.

---

1. Of course, O'Farrill could have challenged this testimony and the very existence of a mutual agreement by appearing at trial and presenting his version of what the memorandum meant.

2. O'Farrill also claims the agreement to purchase the Inwood house must have been in writing because it was an agreement to purchase real estate. *See* TEX. BUS. & COM.CODE ANN.

§ 26.01(b)(4) (Vernon 1987). Because the doctrine of partial performance applies to both agreements, we need not reach this issue. However, this provision of the Statute of Frauds applies to agreements to buy and sell land between owners and purchasers. The agreement before us was simply an agreement between two buyers as to how they would delegate the duties between them when they purchased a home.

CODE ANN. § 26.01(b)(6) (Vernon 1987). O'Farrill's argument fails for several reasons.

■■■■ There was sufficient evidence at trial that the Statute of Frauds did not apply or that an exception to the Statute applied. As González points out, partial performance removes the contract from the Statute of Frauds. *See Central Power & Light Co. v. Del Mar Conservation Dist.*, 594 S.W.2d 782, 790 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). When there is strong evidence of a contract and application of the Statute of Frauds would injure the person relying on the contract and allow the other party unearned benefit, partial performance will allow a remedy. *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex.App.—Dallas 1985, no writ). Further, where one party has fully performed under a contract, the Statute of Frauds may be unavailable to the other party if he knowingly accepts the benefits and partly performs. *Id.*

González testified that she had fully performed her end of the agreements. She put $60,000 of her own money down on the house. In addition, she remained in San Antonio and did not pursue her career, as agreed in the Mexico City agreement. O'Farrill partly performed on both agreements. First, he made the $5,000 monthly payments for several months. Second, according to González's uncontroverted testimony, O'Farrill paid the monthly mortgage on the Inwood home for almost two years, ceasing to make payments only when González filed suit against him.

■■■ O'Farrill had the burden of pleading and proving the applicability of the Statute of Frauds. TEX.R. CIV. P. 94. Although he pleaded it, he presented no evidence in support of his pleading and thus failed to meet his burden.

### Parol Evidence

■■■ González offered parol, or extrinsic, evidence on three issues: duration, the terms of the agreement concerning the cou-

ple's home, and consideration. We have already determined that parol evidence on consideration was admissible. As for duration, we find that the trial judge did not rely on González's testimony on the specific duration of the agreement. Instead, the court implied a reasonable duration, relying on testimony regarding the circumstances at the time the agreement was made. An implied term does not need to be proven by parol evidence.

As O'Farrill points out, in Texas, employment contracts calling for continuing or successive performance have been held to be unambiguous as to duration (in other words, they may be terminated at will). *Clear Lake City Water Auth.*, 549 S.W.2d at 390. Under this analysis, parol evidence could not be allowed to supplement the agreement, because such evidence would contradict the implicit duration term. Such reasoning would also suggest that González has no breach claim because O'Farrill was entitled to cease payment whenever he desired to do so. However, we reject O'Farrill's invitation to extend the at-will doctrine beyond the employment context, especially where there is evidence, both intrinsic and extrinsic, upon which a finding of reasonable duration can be based.

■■ As for the testimony regarding the purchase of the couple's home, we note that this agreement was oral. The parol evidence rule applies only to agreements whose final expression was made in writing and are binding contracts. *Gannon v. Baker*, 818 S.W.2d 754, 755 (Tex.1991) (parol evidence rule applies only to contractual or jural *writings*); *Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("a *written* instrument may not be varied by evidence of an oral agreement"); CALAMARI & PERILLO at § 3–2.

### Sufficiency of Evidence on Damages

In his fifth point of error, O'Farrill claims that the evidence was legally, or alternatively, factually insufficient to support the trial

---

Similarly, O'Farrill's argument that the contract falls within the statute because it is a promise by one person to answer for the debt of another, their corporation, is a misreading of the

cited provision. *See id.* at § 26.10(b)(2). This is not a surety agreement between the two; the oral agreement simply reflects the ex-partner's differing duties in their joint purchase of a home.

court's award of $200,000 in damages.[3] Judge Peeples did not explain his calculation in his findings of fact and conclusions of law. González pleaded damages of $600,000 on the July 5 agreement ($5,000 per month for ten years) and $60,000 on the agreement to purchase the Inwood home (the amount she put down on the home).

O'Farrill claims that there is no evidence to support an award of $60,000 on the house (assuming this is what Judge Peeples ordered) because the loan had been foreclosed, and there was no further obligation on González to pay on the mortgage. Because the home was held in a corporate name, any debt or surplus after foreclosure would accrue to the corporation. In addition, the findings do not reflect that the value of González's occupying the home for more than a year was accounted for.

 Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest. CALAMARI & PERILLO at § 14–4. In order to put the aggrieved party in the same position he or she would occupy if the other party had fully performed, each of these interests must be protected. *Id.* A court must determine "what additions to the injured party's wealth have been prevented by the breach and what subtractions to his wealth have been caused by it." *Mistletoe Exp. Serv. of Oklahoma City, Okla. v. Locke,* 762 S.W.2d 637, 638 (Tex.App.—Texarkana 1988, no writ) (*citing* 5 *Corbin on Contracts* § 992 (1964)). Where a party makes a substantial investment in preparation of performance *or in performing the agreement,* he or she is entitled to have that investment returned. *Id.*

González requested damages of $60,000 in her pleadings; we find this to be a request to recover her reliance interests in the contract. The trial court found that the agreement had been breached, and we may infer that this finding encompasses recovery for reliance in-

terests. *See* TEX.R. CIV. P. 299 (appellate court will not presume findings, no element of which has been included in the findings of fact, but where one element of a cause is found, others may be implied if there is supporting evidence); *see also Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299, 301 (Tex.1963) (if findings of fact are susceptible to different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it).

 We find also that a measure of damages based on reliance interests was tried by consent. TEX.R. CIV. P. 67. At no time during trial did O'Farrill object that the requested $60,000 did not comport with González's breach of contract pleading. O'Farrill's post-trial motions—the request for additional findings of facts and conclusions of law and the motion for a new trial—also did not raise the point. O'Farrill did lodge a no- or insufficient-evidence claim against the damages award, but this did not adequately put the trial judge on notice of any discrepancy between the pleadings, the proof, and the trial judge's findings. *See* TEX.R. CIV. P. 90 (any defects in pleadings are waived in bench trial unless specifically pointed out to trial judge before judgment is signed); *see also Sage Street Assoc. v. Northdale Constr. Co.,* 863 S.W.2d 438, 449 n. 13 (Tex.1993) (stating that no-evidence objection to damages award did not prevent ambiguity issue from being tried by consent, because objection did not refer to failure to plead ambiguity).

As for the damages on the contract for González's monthly support, evidence existed for the trial court to determine a reasonable duration and to award González damages for that period of time.

### Findings of Fact and Conclusions of Law

In point of error six, O'Farrill asserts that the trial judge committed reversible error by not segregating the contract claims and awards in his findings of fact and conclusions

---

3. The nature of the award makes it impossible to determine how Judge Peeples apportioned damages. He upheld the two contracts together, and awarded $200,000 on both. Assuming Judge Peeples awarded González the full $60,000 on the contract regarding the home, $140,000 re-

mains to be accounted for. Assuming, too, that he used the $5,000–per–month figure to determine remaining damages, he awarded damages on the agreement regarding support for 28 months, or two years and four months.

of law. González argues that O'Farrill waived this complaint by not specifically requesting a finding on the separate claims when he requested additional findings of fact and conclusions of law.

The relevant findings are:

### Findings of Fact

a. Two valid contracts existed between the parties.

c. LOUISA GONZÁLEZ'S damages for JOS ANTONIO O'FARRILL AVILA'S breach of contract are $200,000.

### Conclusions of Law

a. Plaintiff should have judgment against Defendant for her damages in the amount of $200,000 and her attorney fees as set forth above.

O'Farrill's relevant requested finding of fact and conclusion of law states:

1. That two items which the Court determines to be contracts which existed between Petitioner and Respondent consisted of: (1) the July 5, 1995 document ..., which the court determines to be a contract, in which Respondent promises to pay Petitioner $5,000 per year and to see her once per year, and (2) the agreement which Petitioner alleges existed between Petitioner and Respondent whereby the two agreed to form a partnership with the purpose of realizing a profit through making investments.[4]

■ This requested finding does not comport with O'Farrill's point of error, which is that the trial court's failure to segregate the two contract claims makes it impossible to determine the apportionment of damages. O'Farrill's requested finding asks the trial court to identify the two contracts but not to apportion the award between them.

■ The law is unequivocal: it is incumbent upon appellants to request additional findings on a contested issue *if they desire* such findings. *See Flintkote Supply Co. v. Thompson*, 607 S.W.2d 41, 42 (Tex.Civ. App.—Beaumont 1980, no writ); *see also*

*Hauglum v. Durst*, 769 S.W.2d 646, 652 (Tex. App.—Corpus Christi 1989, no writ) (finding appellant waived claim that trial judge failed to segregate awards, partly because appellant failed to request additional findings of facts and conclusions of law).

### POINTS OF ERROR SEVEN–NINE: FEES

■ In these points of error, O'Farrill claims that (1) there was legally or factually insufficient evidence to support the $25,000 award of attorneys' fees; (2) there was legally or factually insufficient evidence to support awards for attorneys' fees on appeal; and (3) the trial court erred in awarding attorneys' fees when González's attorneys made no attempt to segregate fees incurred on other claims. González claims that O'Farrill did not properly preserve error on the first two claims by seeking a directed verdict or relief through a motion for new trial. However, when appealing from a non-jury trial, an appellant is not required to preserve allegations of legal or factual insufficiency. Those claims may be raised for the first time on appeal. *See* TEX.R.APP. P. 52(d) (Vernon 1996) (stating preservation not required, after nonjury trial, for factual and legal sufficiency claims) (replaced and modified by Texas Rule of Appellate Procedure 33.1); TEX. R.APP. P. 33.1 comment (stating former Texas Rule of Appellate Procedure 52(d) is embodied in Texas Rule of Civil Procedure 324); TEX.R. CIV. P. 324(a)(b).

■ However, we find that the trial court had before it both legally and factually sufficient evidence upon which to base the award of trial and appellate legal fees. As for trial fees, two attorneys representing González testified that a forty-percent contingency fee was reasonable. One attorney specifically testified that the forty-percent figure was reasonable in light of the small amount of money paid to the attorney up front and in light of the "substantial amount of work involved in recovering the sums due to the plaintiff." *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (attorneys' fees awards should be

---

4. The remaining requested findings detail the consideration found for each agreement.

based on reasonableness, not on evidence of an agreement between the party and his or her attorney). We note also that in reviewing whether attorneys' fees are excessive, this court is authorized to look at the entire record, including the testimony and the amount in controversy. *City of Dallas v. Arnett,* 762 S.W.2d 942, 957 (Tex.App.—Dallas 1988, writ denied).

Gonzalez's attorneys also testified as to what they believed a reasonable hourly fee was. This was credible, legally sufficient evidence. Further, it was uncontroverted by O'Farrill. It survives a factual sufficiency challenge.

The trial judge awarded González's attorneys $25,000, or 12.5 percent of the total award. This award suggests that the court did not award fees based solely on evidence of an agreement between González and her attorneys, but instead took such factors as reasonableness, effort expended, and complexity of the case into account, as the court was mandated to do. *See Arthur Andersen,* 945 S.W.2d at 818 (discussing factors to consider when determining reasonableness of fees). Because there was competent, uncontroverted testimony on these issues, we find the award to be supported by legally and factually sufficient evidence. *See Arnett,* 762 S.W.2d at 958 (upholding award that was within range of testimony).

■ O'Farrill also challenges the award of appellate attorneys fees. After both sides rested, the trial judge invited González's attorneys to offer proof of their appellate attorneys' fees. One of the attorneys for González testified that, in his opinion, reasonable appellate fees ranged between $15,000 and $25,000, depending on the complexity of the issues. In this case, taking those factors into account, he stated that he believed $15,000 would be reasonable. He also testified that, should the case go on to the Texas Supreme Court, another $5,000 to $7,000 would be required. O'Farrill's attorney cross-examined the witness regarding the witness's experience in filing appeals. O'Farrill's attorney then took the stand and testified that reasonable appellate fees for an appeal to this court would be $1,500, and another $1,500 for an appeal to the Texas Supreme Court.

This conflicting testimony raised a fact issue, which was resolved by the trial judge when he awarded $10,000 in appellate fees for an appeal to this court and $5,000 for an appeal to the state supreme court. This amount was somewhat less than requested and a great deal more than O'Farrill's attorneys argued was reasonable. *See id.* (holding that conflicting testimony raised fact issue; fact finder was not obliged to accept one expert's testimony over the other). Legally sufficient evidence was before the trial judge on which he could base this decision. We cannot say the award is so against the great weight of the evidence as to be manifestly unjust. We affirm the award of appellate attorneys' fees.

■ The third point, that fees were not segregated, is waived. In *Southern Concrete Co. v. Metrotec Fin. Inc.,* 775 S.W.2d 446 (Tex.App.—Dallas 1989, no writ), the court stated: "[I]n a nonjury trial, if the trial court awards a fee based upon evidence of services or time spent that should have been segregated but was not, the opposing party must object to the trial court's error by post-judgment motion in order to urge that error on appeal." *Southern Concrete,* 775 S.W.2d at 450.[5] O'Farrill makes no mention of seg-

---

5. We disagree with O'Farrill's contention, on motion for rehearing, that former Rule 52(d), now reflected in Texas Rule of Civil Procedure 324, allows this error to be brought on appeal for the first time. The former rule, which is the clearest expression of the rule's substance, exempts legal and factual sufficiency complaints and complaints of the adequacy or inadequacy of damages from the general rule requiring preservation of error. Failure to segregate fees must be preserved. We reject O'Farrill's claim that the point of error can be characterized as a sufficiency of the evidence point. O'Farrill's claim on appeal to this court was that, because some of the unsuccessful claims involved torts, for which attorneys' fees cannot be recovered, segregation was mandated. However, even if preservation were necessary, we would reject this claim. One of González's attorneys did specifically state that she was excluding work done on a collateral case. *See Bullock v. Kehoe,* 678 S.W.2d 558, 560 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (where record shows only nominal amount of time and effort spent on unsuccessful claims, evidence supports award, even though fee claims were not segregated).

regating claims for fees in his motion for new trial. We overrule this point.

## POINT OF ERROR TEN: INTEREST ON APPELLATE FEES

 In this point of error, O'Farrill claims that the trial court erred in setting the date of judgment as the date on which interest on appellate attorneys' fees should begin to run. O'Farrill argues that the appeal to this court does not begin until appeal is perfected, so interest should run from that date forward. Similarly, interest on the award for Supreme Court fees should not begin running until a writ of error is filed.

González cites two cases that *support* O'Farrill's argument that the beginning date should be the date appeal is taken: *Southwestern Bell Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex.App.—Corpus Christi 1991, writ denied); *Republic Nat'l Life Ins. Co. v. Beard*, 400 S.W.2d 853, 859–60 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). However, González argues that applying this precedent would lead to an unfair result. If O'Farrill had elected not to appeal or had won on appeal, González points out, remittitur provisions would have protected him from accruing interest. But if O'Farrill waits to appeal (a decision entirely his own), González could lose some months of interest. O'Farrill could drag out the appellate process for some months in order to keep from having to pay the interest, and there is nothing González can do about it.

 Since the award of appellate fees must be conditioned on the appellant's failure at the appellate level, *Haynes & Boone v. Bowser Bouldin, Ltd.*, 864 S.W.2d 662, 677 (Tex.App.—San Antonio 1993), *rev'd on other grounds*, 896 S.W.2d 179 (Tex.1995), it is clear that interest on appellate attorney's fees is intended to be directly connected to the pursuit of an unsuccessful appeal. González cannot collect interest on money not yet owed. Therefore, we reform the judgment below to reflect that interest on appellate fees will run from the date appeal was perfected.

## POINT ELEVEN and CONCLUSION: ABUSE OF DISCRETION

In his final point of error, O'Farrill claims that the trial judge abused his discretion in entering judgment against him.

 We find no abuse of discretion. When reviewing a judgment for abuse of discretion, an appellate court must determine whether the trial court acted without reference to any guiding rules and principles; i.e., if the trial court acted arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–2 (Tex.1985). Had O'Farrill raised a better defense (or any defense), this case may not have turned out the way it did. But in the absence of any controverting evidence or any law to preclude the court's findings of fact and conclusions of law, the trial judge did not abuse his discretion in making findings in favor of González's claims.

We affirm the judgment as reformed.

Concurring and dissenting opinion by DUNCAN, J.

DUNCAN, Justice, concurring and dissenting.

I concur in the majority's judgment (only) insofar as it affirms that part of the damages representing Gonzalez's loss arising out of her $60,000 down payment on the house. I dissent, however, from the majority's judgment insofar as it affirms an award for breach of the alleged agreement to pay $5,000 a month for some period of time. On the state of this record, I do not believe it is remotely possible to "understand what the promisor undertook." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).