IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00066-CV

 

Passat Laundry Systems, Inc., 

Passat Corporation, Bowe Permac, Inc.

a/k/a Passat Laundry Systems, Inc., 

f/k/a Boewe-Passat Drycleaning

and Laundry Machinery Corporation,

                                                                                    Appellants

 v.

 

Flake Industrial Services, Inc.,

                                                                                    Appellee

 

 

 



From the 89th District
Court

Wichita County, Texas

Trial Court No. 148,943-C

 



MEMORANDUM  Opinion



 








Flake Industrial Services (Flake) sued
Passat Laundry Systems (Passat) for damages in connection with an Ultra Tandem
UT-45 Continuous Batch Washer and related equipment (the system), which it had
purchased and was installed in its Wichita Falls plant.  Trial was to the
court, which rendered judgment for Flake.  Passat now challenges the legal and
factual sufficiency of the trial court’s findings and the damages calculation.




BACKGROUND

            In the early 1990s, Passat
developed a new series of tunnel washers, the Ultra Tandem series, which were
able to perform different wash functions simultaneously.  The first of the
Ultra Tandem machines, the UT-20, was installed in Flake’s commercial laundry
plant in March 1990 so that Passat could test the machine within a normal
industry environment.  In consideration, Passat agreed to allow Flake to use
the “prototype” UT-20 or “a replacement Passat prototype 40 KG” machine for a
limited time without charge.  Passat and Flake entered into an Equipment
Purchase and Sale Agreement effective December 31, 1990, which recited this
agreement and documented the purchase of a two-stage press, a batch dryer, and
a shuttle conveyor.  This contract contained a statement that the equipment was
sold “AS IS” with no implied warranties and provided for an express
twelve-month warranty on the press, dryer, and shuttle conveyor.

            On July 1, 1991, Passat
replaced the UT-20 with a UT-45 Batch Washer, the larger washer intended as the
replacement in the first contract.  In December of 1992, Bob Montgomery, a
Passat salesman, and Leon Flake, CEO of Flake, negotiated the terms and
executed the Second Equipment Purchase and Sale Agreement.  Under this agreement,
Flake agreed to purchase the UT-45 and a single-stage press.  Leon Flake and
Bob Montgomery testified at trial that during the negotiation process Bob
Montgomery stated that equipment of the UT-45’s nature has a life expectancy in
the industry of fifteen to twenty years.  This contract also provided that the
equipment was sold “AS IS” with no implied warranties.  The contract did not
include the fifteen to twenty year representation.  However, it provided that
the structural components of the UT-45 would be free from defects in material
and workmanship through May 15, 1998 and provided shorter warranties for other
parts.  This contract stated that after the expiration of the warranties,
“there shall be no further express or implied warranties of any kind with
respect to the UT-45 Batch Washer.”  In addition, the contract provided a
merger clause which stated that the second contract, together with the first
contract, contained the entire understanding of the parties and superseded all
prior agreements, arrangements, and understandings, whether written or oral.

            In August 1997, the UT-45
malfunctioned and no longer properly transferred loads of laundry.  Flake’s
maintenance supervisor discovered cracks in the machine’s interior drum.  In
September, Andy Baldwin, a Passat service technician, inspected the UT-45 and
determined that the last two compartments of the UT-45 needed to be replaced.  However,
 Baldwin’s report indicated that there were only small cracks in certain
compartments of the machine.  The parties corresponded throughout September and
October about the possible methods of repairing the cracks.  Flake maintained
that welding the cracks in the UT-45 was not acceptable.  Passat stated in a
letter to Flake that it intended to fulfill all contractual commitments made
pursuant to the Second Equipment Purchase and Sale Agreement.  However, Passat
failed to make satisfactory repairs or to provide replacement parts.

            Flake filed suit against
Passat on December 23, 1997 and stated claims for breach of contract, breach of
express warranty, breach of the implied warranties of merchantability and
fitness for a particular purpose, and misrepresentations under the Texas
Deceptive Trade Practices Act.




ISSUES

            The trial court entered
Findings of Fact and Conclusions of Law.  Passat challenges the legal and
factual sufficiency of the following findings:  (1) Passat’s statement that the
Tandem System would last fifteen to twenty years was an actionable
representation; (2) Passat represented that the entire Ultra Tandem System
would last fifteen to twenty years; (3) Passat breached the second contract and
its warranty provision; (4) Passat breached an implied warranty; (5) Flake
relied to its detriment on any false, misleading or deceptive acts or
omissions; and (6) Passat’s representations and omissions, or breaches of
express and implied warranties, were a producing cause of Flake’s damages. 
Passat also challenges the factual sufficiency of the finding that Passat
failed to disclose that the UT-45 was an experimental machine.  Finally, Passat
challenges the trial court’s damages calculations.

STANDARD OF REVIEW

Findings of fact in a bench trial have
the same force and dignity as a jury’s verdict upon jury questions.  Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  When
challenged on appeal, the findings are not conclusive on the appellate court if
there is a complete reporter’s record, as there is here.  Zac Smith &
Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987); In re K.R.P.,
80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). 
Those findings are reviewable for legal and factual sufficiency of the evidence
by the same standards that are applied in reviewing evidence supporting a
jury’s answers.  Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Dominguez v. Castaneda, 163 S.W.3d 318, 325 (Tex. App.—El Paso 2005,
pet. denied).  Generally, we will not disturb a trial court’s findings if there
is evidence of probative force to support them.  See Ski River Dev., Inc. v.
McCalla, 167 S.W.3d 131, 136-37 (Tex. App.—Waco 2005, pet. denied); Barrientos
v. Nava, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

            Therefore, in conducting a legal sufficiency review,
we will view the evidence in the light most favorable to the trial court’s
findings and indulge every reasonable inference that
supports it.  City of Keller v. Wilson, 168 S.W.3d 802, 821 (Tex. 2005).  The evidence is legally sufficient if it would
enable reasonable and fair-minded people to reach the verdict under review.  Id. at 827.  We credit favorable evidence if reasonable
jurors could, and disregard contrary evidence unless reasonable jurors could
not.  Id.  If the evidence falls within a “zone of
reasonable disagreement,” we cannot substitute our judgment for that of the
trier-of-fact.  See id. at 822.

            In
reviewing a factual sufficiency issue, we consider all the evidence, whether it
supports or is contrary to the finding.  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  Reversal could occur because the finding
was based on weak or insufficient evidence or because the proponent’s proof,
although adequate if taken alone, is overwhelmed by the opponent’s contrary
proof.  Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet denied) (citing William Powers, Jr. & Jack Ratliff, Another Look at “No
Evidence” and “Insufficient Evidence,” 69 Tex. L. Rev. 515, 519 n.11 (1991)).  We set aside the finding
based on factual insufficiency only if the evidence supporting the finding is
so contrary to the overwhelming weight of the evidence as to be manifestly
unjust and clearly wrong.  Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402,
407 (Tex. 1998).

We review the trial court’s conclusions
of law de novo.  Dominguez, 163 S.W.3d at 325.  Under de novo review,
the reviewing court exercises its own judgment and redetermines each legal
issue.  Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998).

“AS IS”
Agreement

            Proof of causation is
essential for recovery on Flake’s DTPA and breach of warranty causes of
action.  Tex. Bus. & Com. Code Ann. §17.50(a)
(Vernon Supp. 2005).  Passat argues that the “as is” clause in the contract
precludes Flake from proving Passat caused it harm.  Flake argues that Passat
failed to plead the “as is” clause as an affirmative defense to its DTPA claims
and therefore the issue is not before us.  Flake failed to cite any authority
that requires an “as is” clause to be pled as an affirmative defense.  Regardless,
the issue was tried by consent.  The “as is” clause is a significant issue
because if the “as is” clause in the second contract is valid, legally
sufficient evidence will not exist to show that Passat caused Flake damages and
Flake will not recover on its DTPA and breach of warranty claims.  City of Keller, 168 S.W.3d at 820. 

            “The validity of an ‘as is’
agreement is determined in light of the sophistication of the parties, the
terms of the ‘as is’ agreement, whether the ‘as is’ clause is freely negotiated,
whether it was an arm’s length transaction, and whether there was a knowing
misrepresentation or concealment of a known fact.”  Larsen v. Langford, 41
S.W.3d 245, 252 (Tex. App.—Waco 2001, pet. denied) (citing
Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156,
160-62 (Tex. 1995)).

            Throughout his
career, Bob Montgomery has worked for two commercial laundry manufacturers and,
at the time of negotiating the present contract, had approximately thirteen year’s
experience selling commercial laundry equipment and negotiating sales.  Leon
Flake is the CEO of Flake Industrial Services and testified that he had been in
the laundry business for fifty years and had experience in negotiating
equipment purchase agreements.  Further, the parties had experience negotiating
with each other in the past.  Before negotiating the sale of the UT-45, Montgomery was involved in the sale of about a dozen pieces of equipment to Flake.  Both
individuals had experience in the industry and with commercial laundry
equipment.  There is evidence that the parties were similarly knowledgeable and
sophisticated in this industry.

In Prudential, the
court stated that in determining the validity of an “as is” clause, a reviewing
court must also look to the terms of the agreement itself.  The terms of the
agreement in Prudential stated that the purchaser agreed to take the
property “as is” with any and all latent and patent defects.  Prudential, 896
S.W.2d at 160.  The Prudential agreement also stated that the purchaser
acknowledged that it was relying upon its own examination of the property.  Id.  The terms of the present agreement state that the equipment was
purchased and sold in an “AS IS” condition with no implied warranties of any
kind, including, without limitation, any implied warranties of merchantability
or fitness for a particular purpose.  It is not necessary that the terms of an
“as is” agreement be as specific as the Prudential terms if the contract
leaves no doubt exactly what the parties agreed to.  Larsen, 41 S.W.3d at 252. 
By signing the agreement with the “as is” language, agreeing to accept the
equipment without any implied warranties, and signing the agreement with a
merger clause which stated that the written contracts contained the entire understanding
of the parties, this contract left no doubt that Flake intended to rely solely
on the statements in the contract.

The evidence presented
further shows that Montgomery and Flake actively negotiated the terms of the contract
and conducted this transaction at arm’s length.  Handwritten changes were made
to the agreement including changes to the express warranty provisions. 
Further, Montgomery testified that Leon Flake actively negotiated the
contract.  Looking at the totality
of circumstances, the evidence shows that Flake agreed to make its own
appraisal of the bargain and accepted the risk that it might be wrong.  Prudential,
896 S.W.2d at 161.  We hold the agreement
between the parties contained a valid “as is” clause which negates causation
unless Flake established that it was fraudulently induced to enter the
agreement.

Fraudulent Inducement

An otherwise valid “as is”
agreement will not negate the causation element of a DTPA or a breach of
warranty claim if the buyer can prove fraudulent inducement such as a knowing misrepresentation or concealment
of a known fact.  Id. at 162.  In order to prove fraudulent inducement, evidence
must exist for each element of a simple fraud claim.  Fletcher v. Edwards, 26
S.W.3d 66, 77 (Tex. App.—Waco 2000, pet. ref’d).  The elements of simple fraud
are:

(1)  
a material
representation;

(2)   which is false;

(3)   which was known to be false when made or
was made recklessly as a positive assertion without knowledge of its truth;

(4)   which was intended to be relied upon;

(5)   which was relied upon; and 

(6)   which caused injury.

 

Id.  Flake
argues Passat represented that the UT-45 had a life expectancy of fifteen to
twenty years.  Montgomery testified that during negotiations with Leon Flake he
stated that equipment of the nature of the UT-45 generally has a life
expectancy of fifteen to twenty years.  Flake did not present evidence of the
life expectancy of commercial laundry equipment to contradict this
representation.  Further, Montgomery testified that to his knowledge his
statement was correct at the time of the negotiations.  Flake has not presented
evidence that Montgomery’s statements were false when made or made recklessly;[1]
therefore, the “as is” clause in the agreement is valid and negates the causation
element of Flake’s DTPA and breach of warranty claims.  We sustain issue one,
in part.

Failure to Disclose

In its second issue, Passat challenges
the factual sufficiency of the evidence to support the trial court’s finding
that Passat failed to disclose the UT-45 was an experimental machine.  In
viewing all the evidence, we must set aside this finding.  The first contract
executed by the parties in December 1990 clearly stated that the UT-20 and its
replacement were “prototypes.”  Further, Bob Montgomery testified that he “made
it known to Flake” that the progression of the batch washer was to be larger
capacity machines and referred to the replacement UT-45 as a “future model.” 
Coupled with Leon Flake’s significant experience in the industry, these facts
indicate that Flake was aware that Passat viewed the UT-45 as an experimental
machine.  Therefore, we sustain issue two and we must remand to the trial court
the issue of whether the failure to disclose that the UT-45 was experimental
fraudulently induced Flake to enter the agreement with Passat so as to negate
the “as is” clause in the agreement.[2]

 

 

Alternative
Findings

The fact that the trial
court’s DTPA and breach of warranty findings are not supported by legally
sufficient evidence does not end our inquiry.  When a party obtains favorable
findings on alternative theories, it may obtain judgment on the theory
entitling it to the greatest or most favorable relief.  Transport Ins. Co.
v. Faircloth, 898 S.W.2d 269, 274 (Tex. 1995); Boyce Iron Works, Inc. v.
Southwestern Bell Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988).  If the
judgment is reversed on appeal, the appellate court should consider all
alternative theories and render judgment on the theory granting the next
highest award of damages that can be rendered from the pleadings, evidence, and
verdict.  Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002) (citing Birchfield v. Texarkana Mem’l Hosp., 747 S.W.2d 361, 367 (Tex. 1987)).  Thus, we will determine if Flake may recover under the trial court’s findings
supporting a breach of contract.

Sufficiency of Breach of Contract
Finding

            Passat asserts there is no
legally or factually sufficient evidence to support the trial court’s finding
that Passat breached the warranty provision of the sales contract.  The
agreement provided that during the express warranty period, Passat would repair
the UT-45 or provide replacement parts and diagnose problems with the machine. 
At trial, Flake presented evidence that Andy Baldwin, a Passat technician,
inspected the UT-45 and determined that two of its compartments needed to be
replaced.  The evidence showed that although this diagnosis was not indicated
in Baldwin’s service report, it was made known to Passat by Flake.  Further, as
early as August 1997 Passat was aware that the UT-45 was in need of repair or
replacement parts.  As of December 1997, Passat had failed to provide repair or
replacement parts.  We hold this evidence to be legally
and factually sufficient to support the trial court's finding that Passat
breached the warranty provision of the contract.  We overrule issue one as to
this claim.

Damages

The general rule for measuring damages
for breach of contract is “just compensation for the loss or damage actually
sustained.”  Stewart v. Basey, 245 S.W.2d 484, 486 (1952).  Damages for breach of contract protect restitution interests,
reliance interests, and expectation interests.  Qaddura v. Indo-European
Foods, Inc., 141 S.W.3d 882, 889 (Tex. App.—Dallas 2004, pet. denied) (citing
O’Farrill Avila v. Gonzalez, 974 S.W.2d 237, 247 (Tex. App.—San Antonio
1998, pet. denied)).  The most common interest protected is the expectation or
benefit-of-the-bargain interest.  Id.  In this case, to protect
the expectation interest, the measure of damages is the reasonable cost to
repair the UT-45.  The trial court found that amount to be $50,000, which we
find to be supported by legally and factually sufficient evidence.  Flake is
also entitled to recover attorney’s fees, which the trial court found to be
$29,317.50.  Tex. Civ. Prac. & Rem.
Code Ann. § 38.001 (Vernon 1997).

We overrule issues three, four, and
five.  

CONCLUSION

For the reasons stated, the judgment of
the trial court is reversed, and we remand to the 
trial court for further proceedings consistent with this opinion.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Reversed
and rendered

Opinion
delivered and filed March 15, 2006

[CV06]









    [1]           We
also believe that the reliance element fails.  The system had been in use by
Flake for a year and a half and Flake had extensive experience with Passat’s
equipment line.

 





    [2]           Passat
challenges only the factual sufficiency and not the legal sufficiency of the
failure-to-disclose finding.