**Affirmed and Memorandum Opinion filed August 30, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00488-CV

## IN THE MATTER OF THE MARRIAGE OF RASHA AL HASHIMI AND HAIDER ALWASH

**On Appeal from the 306th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 15-FD-2744**

## M E M O R A N D U M   O P I N I O N

Rasha Al Hashimi ("Rasha") appeals from a final divorce decree. In her first issue, Rasha contends the trial court erred by awarding her former father-in-law, intervenor Salam Alwash ("Salam"), certain property she contends belongs to the community estate. In her second issue, Rasha asserts that she proved by clear and convincing evidence that her husband, Haider Alwash ("Haider"), committed adultery, and the trial court erred by failing to grant the divorce on adultery grounds. The trial court granted the divorce on insupportability grounds, and Rasha does not challenge that finding.

After review of the record, we conclude that Rasha failed to challenge all independent grounds supporting the trial court's judgment awarding the disputed property to Salam. Thus, we overrule her first issue. Further, we conclude that the trial court did not abuse its discretion in granting the divorce on insupportability grounds, rather than adultery, under the circumstances of this case. Accordingly, we affirm the trial court's judgment.

## Background

Haider and Rasha married legally in October 2011 and through a religious ceremony in August 2013. They separated in late September 2015, and Rasha filed for divorce on insupportability and adultery grounds in October 2015. Rasha also alleged that Haider fraudulently transferred community assets ($603,000 cash) to Haider's brother and sister-in-law, Hashim Salam Alwash ("Hashim") and Israa Basil Ali ("Ali"). Rasha requested that the trial court restore this cash to the community estate. In September 2016, the trial court signed an agreed order requiring that (1) $595,000 from Hashim's and Ali's bank account be transferred to a separate, interest-bearing account (the "Transfer Account") and (2) the "bank . . . only disburse any funds from the account pursuant to a court order."

Salam filed a petition in intervention in the divorce proceedings, claiming that two homes, the funds in the Transfer Account, and a vehicle (the "Honda CRV")—all of which Rasha claimed as community assets—belonged to him.[1] Salam sought a declaration that he owned these assets, and he requested the court to impose a constructive trust and award the contested assets to him.

---

[1] Haider also claimed that these assets were Salam's property that Haider held in trust for Salam.

2

The trial court conducted a two-day bench trial. Rasha testified that Haider sent love notes and text messages, and placed phone calls, to another woman with whom Haider claimed to be in love. Rasha believed that Haider committed adultery because he said he loved the other woman and had kissed her. Rasha introduced photos of messages exchanged between Haider and the other woman, including messages in which the two declared their love for each other. Rasha presented no proof that Haider had extramarital sexual relations with the other woman. Rasha testified that Haider refused to give her a religious divorce, which was important to her because she could not remarry in her faith unless she obtained a religious divorce.[2] Absent an agreement from Haider, Rasha, as a woman, could secure a religious divorce only upon proving certain grounds, such as adultery.

Rasha testified that the marital estate included the following disputed property at issue: (1) a house in Canada (the "Canadian House"); (2) a house in League City, Texas (the "League City House"); (3) the funds in the Transfer Account; and (4) the Honda CRV. According to Rasha, the Canadian House was purchased using money given to the couple by their parents. Rasha testified that she and Haider had title to the Canadian House because only their names appeared on the deed as owners. Rasha claimed that money from the couple's joint account was used to purchase the League City House and the Honda CRV, both of which were titled only in Haider's name. She stated that Haider received income from his "family business" that was deposited into the couple's joint account through wire transfers from Istanbul. Rasha did not know what Haider did to earn these funds.

Haider testified that he never committed adultery with the other woman. He also denied engaging in a physical relationship with her. Haider stated that he would

_____

[2] The record reflects that both Rasha and Haider are practicing Muslims.

3

agree to grant Rasha a religious divorce. He explained that he did not need grounds for a religious divorce.

Haider testified that once he was granted United States residency, he helped his parents apply to come to the United States from Iraq. According to Haider, after his parents obtained approval to immigrate to the United States, they began transferring money to the account that he and Rasha jointly held. Haider pointed to evidence showing various transfers of nearly $1 million through Istanbul, Turkey. According to Haider, these funds came from his father's accounts in Iraq and were to be held or invested for his father. These funds were not gifts to Haider and Rasha. Haider stated he told Rasha, "I am keeping money in trust for my dad because he's moving here."

According to Haider, Salam owns the Canadian House and the League City House. Haider stated that Salam provided the full purchase money for both houses, and that Haider held the houses "in trust" for Salam. Regarding the Canadian House, Haider described the "trust agreement" as "this house will be bought by my dad, and the house will be registered in my name until he moved to the United States." Haider explained that Salam wired the purchase money to Rasha's father, Haider Al Hashimi ("Rasha's Father"), who used it to purchase the house with Haider's and Rasha's names on the deed as buyers. Haider testified that Rasha knew the Canadian House was purchased as an investment for Salam using Salam's money. Regarding the League City House, Haider testified that he purchased that house with his father's money. Again, Haider stated he and Rasha were holding the house "in trust" for Salam.

According to Haider, he also used part of his father's money to buy the Honda CRV for his father, although he and Rasha were permitted to use it until his father arrived from Iraq. Haider acknowledged that after he and Rasha separated, he moved

a significant sum of money from their joint account to a separate account in his name only, then transferred this money to his brother and sister-in-law.

Rasha's Father testified that he contributed over $100,000 of his personal funds to the purchase of the Canadian House; the rest of the money came from Salam. When shown documents demonstrating that Salam wired the entire amount for the home purchase to Rasha's Father, he explained that a portion of the funds Salam wired to him was to pay off computers Salam bought from Rasha's Father's company.

Finally, Salam testified. Salam stated that once he learned that he would be able to move to the United States, he began transferring money to both his sons—Haider and Hashim. According to Salam, he transferred his "life savings" to his sons. Salam stated that he wanted to purchase a home in Canada as an investment and to help Haider and Rasha by letting them either live there or use the rental income to help them with expenses. Salam stated that he provided all the purchase money for the Canadian House and that Rasha's Father did not provide "one cent" for its purchase. Salam explained that the reason he asked Rasha's Father to send him an invoice for laptop computers was because the "office of money transfers" questioned him about wiring the money from Iraq for the home purchase, but that he did not actually purchase any laptop computers. Salam acknowledged that transferring his life savings took more than a year and that nothing in writing confirmed his agreement with Haider and Rasha concerning either the money transfer or the real estate transactions. According to Salam, the League City House was intended to be used as his residence when he came to the United States, or, if he did not move to Texas, as an investment/rental property. Salam also confirmed that Haider sought his permission to buy the Honda CRV and that this vehicle was to be Salam's when he came to the United States.

5

After hearing the evidence and counsel's argument, the trial court granted the divorce on insupportability grounds. As to Salam's claims, the trial court found that (a) the money in the Transfer Account, (b) the Canadian House, (c) the League City House, and (d) the Honda CRV were neither community property nor the separate property of Rasha or Haider. The trial court declared that Salam owned these assets and awarded the assets to him. The trial court signed a final divorce decree incorporating these rulings. The trial court did not expressly impose a constructive trust or expressly find that Haider held the contested property as constructive trustee for Salam. No party requested findings of fact and conclusions of law, and the court signed none. After Rasha's motion for new trial was overruled by operation of law, this appeal timely followed.

## Analysis

Rasha challenges the final divorce decree in two issues. First, she contends the statute of frauds prevented the trial court from finding that Salam owned the contested assets and awarding the property and money to Salam. Second, Rasha argues that she proved adultery by clear and convincing evidence. We address each issue in turn, mindful that the trial court made no findings of fact and conclusions of law. Thus, the trial court's judgment must be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We imply that the trial court made all necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

## A.    Statute of Frauds

We begin with the fundamental principle that "[p]roperty possessed by either spouse during or upon dissolution of the marriage is presumed to be community property." Tex. Fam. Code § 3.003(a); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). A party seeking to rebut that presumption must do so by clear and convincing

6

evidence. *See* Tex. Fam. Code § 3.003(b); *cf. Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002); *Stavinoha*, 126 S.W.3d at 607. Thus, Salam, as the party asserting ownership of the disputed property, had the burden to rebut the presumption.

Salam presented evidence of oral agreements to the effect that he sent his life savings to his sons in the United States to be held in trust for his benefit or used to acquire other assets also to be held in trust until he came to the United States. Salam presented documentary evidence that the Canadian House, the League City House, and the Honda CRV were acquired with his money. Salam also presented documentary evidence that the funds in the Transfer Account consisted of his money that he wired to the United States.

Rasha's sole argument that Salam failed to rebut the community property presumption is based on the statute of frauds. *See* Tex. Bus. & Com. Code § 26.01(a), (b)(4), (b)(6). Rasha contends that the agreements described by Salam and Haider regarding the disputed property are unenforceable because Salam's claims to this property are based on a contract for the sale of real estate or an agreement that was not to be performed within one year. *See id.* (providing that contracts for the sale of real estate and agreements that are not to be performed within one year must be in writing and signed by the person charged with the agreement). Rasha contends the trial court erred in "failing to apply the statute of frauds and granting all the property to an Intervenor who had nothing in his name and no written contracts." She does not assert a general challenge to the evidentiary sufficiency to support the trial court's judgment; rather, she argues that the statute of frauds should

7

have prevented the trial court from finding that the Canadian House, the League City House, the Honda CRV, and the Transfer Account funds belonged to Salam.

The statute of frauds requires that certain agreements be in writing and signed by the party against whom enforcement is sought. *Id.* § 26.01(a). The purpose of the statute is to "remove uncertainty, prevent fraudulent claims, and reduce litigation." *Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984); *see also Rossmann v. Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797, 806-807 (Tex. App.—Dallas 2015, pet. denied). The statute of frauds is an affirmative defense to a breach of contract claim that renders certain oral contracts unenforceable. *See Smith v. Smith*, 541 S.W.3d 251, 261-62 (Tex. App.—Houston [14th Dist.] 2017, no pet.). As such, the statute is asserted as a defense by a party that has been charged with breaching an oral agreement that falls within its purview. *See, e.g.*, *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 640-42 (Tex. 2013) (Dynegy pleaded the statute of frauds as an affirmative defense in response to Yates's suit on an oral agreement to pay fees for Dynegy's former employee); *Haase v. Glazner*, 62 S.W.3d 795, 796-97 (Tex. 2001) (Glazner sued Haase for, *inter alia*, breach of contract; Haase responded by asserting that the alleged contract was unenforceable under the statute of frauds); *Walker v. Walker*, No. 14-16-00357-CV, 2017 WL 1181359, at *2-3 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, no pet.) (mem. op.) (family members sued other family members for breach of oral agreement to convey real property; family members who were sued invoked statute of frauds to avoid enforcement of oral agreement); *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We presume without deciding that the alleged oral agreements may be enforced against Rasha, who claims to be a non-party to them, and that Rasha may invoke the statute of frauds to challenge their enforceability as to assets that are

presumptively community assets.[3]  We further presume that the agreements described by Salam and Haider regarding the disputed property fall within the scope of the statute of frauds.  Thus, Salam was required to plead and prove an exception that would remove the oral agreements from the statute's purview. *See Dynegy, Inc.*, 422 S.W.3d at 642.  In his Third Amended Petition in Intervention, Salam raised at least two exceptions relevant here:  constructive trust and partial performance.

An exception to the statute of frauds exists when there has been a breach of a fiduciary, or confidential, relationship that requires the imposition of a constructive trust. *See Martinez v. Martinez*, No. 10-15-00410-CV, 2017 WL 3686850, at *3 (Tex. App.—Waco Aug. 23, 2017, pet. denied) (mem. op.); *Troxel v. Bishop*, 201 S.W.3d 290, 297-98 (Tex. App.—Dallas 2006, no pet.) ("The Statute of Frauds is not a bar to the establishment of a constructive trust, since such trusts may be proved by parol."); *see also Ginther v. Taub*, 675 S.W.2d 724, 728 (Tex. 1984).  "A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015).  The theory underlying the remedy of constructive trust is the equitable notion that the "acquisition or retention of the property is wrongful and that [the possessor of the property] would be unjustly enriched if [the possessor] were permitted to retain the property." *Id*. at 88 (quoting *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736

---

[3] Generally, a non-party to an alleged oral agreement is not bound by that agreement and therefore cannot invoke the statute of frauds. *See Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 939 (Tex. 1973); *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 74 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Madera Production Co. v. Atlantic Richfield Co.*, 107 S.W.3d 652, 662-63 (Tex. App.—Texarkana 2003, pet. denied).  Rasha has consistently maintained that she was not a party to the alleged agreements between Salam and Haider, though Haider testified that Rasha knew of the agreements.  Rasha has not contested, however, that an agreement to which she was not a party could affect her interest in purported community assets, such as money deposited into a joint account or a house deeded in part to her.  For their part, neither Salam nor Haider have contested Rasha's entitlement to rely on the statute of frauds as a defense to such an agreement.

(Tex. App.—San Antonio 2007, pet. denied)). "[T]he Statute of Frauds is not a bar to the creation of a constructive trust arising from an abuse of a confidential or fiduciary relationship in the context of a parol transaction." *Procom Energy, L.L.A. v. Roach*, 16 S.W.3d 377, 381 (Tex. App.—Tyler 2000, pet. denied). To obtain a constructive trust, the proponent must prove: "(1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property." *KCM Fin. LLC*, 457 S.W.3d at 87.

Partial performance is another exception to the statute of frauds alleged by Salam. "Under this exception, contracts that have been partially performed, but do not otherwise meet the requirements of the statute of frauds, may still be enforced in equity if denial of enforcement would amount to a virtual fraud in the sense that the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and the other party would reap an unearned benefit." *See, e.g., Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ); *see also Smith v. Smith*, 541 S.W.3d 251, 262 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Partial performance by either party removes a contract from the requirements of the statute of frauds when the partial performance is unequivocally referable to the agreement and corroborative of the fact that a contract actually was made."); *Espinoza v. Lopez*, 468 S.W.3d 692, 696 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Partial performance, however, will operate to exempt an oral contract for the sale or transfer of real property from the statute of frauds.").

Whether the circumstances of a particular case fall within an exception to the statute of frauds is generally a fact question. *Bill Wyly Dev., Inc. v. Smith*, No. 01-16-00296-CV, 2017 WL 3483225, at *5 (Tex. App.—Houston [1st Dist.] Aug. 5,

2017, no pet.) (mem. op.); *Duradril, L.L.C.*, 516 S.W.3d at 158; *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 192-93 (Tex. App.—Dallas 2013, pet. denied). A trial court acts as fact finder in a bench trial and is the sole judge of the credibility of witnesses. *See Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981); *Hailey v. Hailey*, 176 S.W.3d 374, 383 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Thus, the trial court may accept or reject any or all of a witness's testimony. *Hailey*, 176 S.W.3d at 383. The trier of fact may believe one witness and disbelieve another and may resolve inconsistencies in the testimony of a witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). We may not substitute our judgment for the trial court's assessment of a witness's testimony. *Hailey*, 176 S.W.3d at 383. Finally, when, as here, findings of fact and conclusions of law were neither requested nor filed, we presume that the trial court made all findings in support of its judgment and draw every reasonable inference supported by the record. *Powell v. Reiswerg*, No. 14-12-00776-CV, 2013 WL 5883807, at *3 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet.) (mem. op.).

Based on the judgment, the trial court obviously credited Salam's and Haider's testimony regarding the agreements and discredited Rasha's, as was its prerogative. The trial court also credited Salam's and Haider's testimony and documentary evidence showing the transfers of Salam's money to the United States and the subsequent use of that money to purchase the Canadian House, the League City House, and the Honda CRV. We cannot say that doing so amounted to an abuse of discretion. *See, e.g.*, *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) ("The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision."). As we have presumed that the agreements come within the scope of the statute of frauds, we must determine whether the trial court's judgment is properly based on one of the exceptions raised by Salam. *See Worford*,

11

801 S.W.2d at 109 (trial court's judgment must be upheld on any legal theory that finds support in the evidence).

Rasha's arguments in support of her first issue focus solely on the constructive trust exception. In fact, both sides commit substantial briefing to whether evidence supports an implied finding that a constructive trust existed over the disputed property. However, we need not consider the point because the trial court's judgment need not be grounded on the constructive trust theory. *See Leigh v. Weiner*, 679 S.W.2d 46, 49 (Tex. App.—Houston [14th Dist.] 1984, no writ) (court need not consider whether application of secret trust theory was error because judgment could have been grounded on constructive trust theory). The trial court may have concluded that the partial performance exception alleged by Salam applied, and Rasha has not presented any argument or authority that Salam failed to establish that the partial performance exception to the statute of frauds removes the oral agreements regarding the real property, the Honda CRV, or the money in the transfer account from the statute's purview.

Generally, an appellant must attack all independent bases or grounds that support an adverse ruling. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Fox v. Maguire,* 224 S.W.3d 304, 307 (Tex. App.—El Paso 2005, pet. denied). If an appellant fails to do so, then we must affirm. *See Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 719-20 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Britton*, 95 S.W.3d at 681; *Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 431 (Tex. App.—Austin 2000, no pet.) (applying this principle to party's failure to attack implied findings and conclusions following bench trial); *Inscore v. Karnes Cnty. Sav. & Loan Ass'n*, 787 S.W.2d 183, 184 (Tex. App.—Corpus Christi 1990, no writ). Accordingly, we overrule Rasha's first issue.

**B.     Adultery**

In issue two, Rasha asserts that she proved adultery by clear and convincing evidence; thus the trial court erred by failing to grant the divorce on this ground.

A trial court may grant a divorce because the marriage has become insupportable or because one spouse has committed adultery. *See* Tex. Fam. Code §§ 6.001, 6.003. The trial court has discretion to choose between insupportability and fault-based reasons when deciding whether, and on which grounds, to grant a divorce. *See Baker v. Baker*, 469 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Here, the trial court granted the divorce on insupportability grounds. Rasha contends the trial court should have granted the divorce on adultery grounds. "'Adultery,' as used in a divorce proceeding, means the voluntary sexual intercourse of a married person with one not the husband or wife of the offender." *Ayala v. Ayala*, 387 S.W.3d 721, 733 (Tex. App.—Houston [1st Dist.] 2011, no pet). Either direct or circumstantial evidence can support an adultery finding, but mere suggestion and innuendo, which is all that is present in this case, is insufficient to prove adultery. *See id.*; *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.) Moreover, even if sufficient evidence of adultery existed in this case, the trial court did not abuse its discretion by granting the divorce solely on the basis of insupportability. *See Applewhite v. Applewhite*, No. 02-12-00445-CV, 2014 WL 787828, at *2 (Tex. App.—Fort Worth Feb. 27, 2014, no pet.) (mem. op.) (despite husband's stipulation that he had affair during marriage, trial court did not abuse its discretion by granting a divorce on the basis of insupportability instead of adultery); *Lisk v. Lisk*, No. 01-04-00105-CV, 2005 WL 1704768, at *5 (Tex. App.—Houston [1st Dist.] July 21, 2005, no pet.) (mem. op.) (same).

Under these circumstances, the trial court did not abuse its discretion by failing to grant a divorce on adultery grounds. Accordingly, we overrule Rasha's second issue.

## Conclusion

Having overruled Rasha's two issues, we affirm the trial court's judgment.


/s/ Kevin Jewell
   Justice

Panel consists of Justices Busby, Brown, and Jewell.