In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00441-CV**

_____

**MARY LATONA WARD, INDEPENDENT EXECUTRIX OF THE ESTATE OF ERIC L. WARD, Appellant**

**V.**

**JACOB SPONSELLER, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-08-10366-CV**

**MEMORANDUM OPINION**

In this breach of contract case, Mary Latona Ward, as Independent Executrix of the Estate of Eric L. Ward,[1] appeals the trial court's judgment in favor of Jacob Sponseller.[2] Following a bench trial, the trial court concluded that Eric breached a verbal agreement as Sponseller's employer to allow Sponseller to earn a percentage

---

[1] For purposes of clarity, we refer to the Wards by their first names throughout this opinion.

[2] Sponseller initially sued Eric, but in 2018, Eric passed away. Mary subsequently appeared and answered as the independent executrix of Eric's estate.

of equity in a home Eric purchased for Sponseller, for each year of Sponseller's continued employment with Eric's company. The trial court determined that the statute of frauds applied to the agreement, but Sponseller proved partial performance as an exception to the statute of frauds. For the following reasons, we affirm.

## I. Background

In 2010, Sponseller began working for Lincoln Manufacturing. Eric was the sole owner of Lincoln. Sponseller steadily and significantly increased sales revenues while there. In 2011, Lincoln promoted Sponseller to sales manager over all product lines.

In 2014, one of Lincoln's customers, NCS Energy Services, offered Sponseller a job. NCS's vice president provided Sponseller with a written offer that included a base salary, signing bonus, employer matching 401(k) contributions, and a vehicle allowance, among other things. While the base salary offer was the same as Sponseller's salary at Lincoln, the overall compensation package NCS offered Sponseller was calculated to be $60,000 per year more than Sponseller was making at Lincoln.

Sponseller testified that he accepted NCS's offer, but when he gave Lincoln his notice, he shared NCS's offer with Eric. Shortly before Sponseller's scheduled departure from Lincoln for his new job at NCS, Eric approached Sponseller with another offer. Eric told him that while Lincoln could not offer the same benefits to

2

all its other employees that NCS offered Sponseller, Eric would personally purchase a home for Sponseller valued at approximately $300,000 if Sponseller would continue working for Lincoln. Sponseller could earn a twenty percent interest in the home's equity each year over five years, and after five years, Sponseller would own the home. Sponseller explained the amounts coincided with the additional compensation NCS offered of $60,000 per year. Sponseller did not dispute that the agreement involved the sale and purchase of real estate and would have taken more than a year to complete.

After receiving Eric's counteroffer, Sponseller spoke to his wife, and they agreed he would forego the offer from NCS and remain employed at Lincoln. Sponseller testified that but for Eric's counteroffer, he would have gone to work for NCS. At trial, Sponseller's wife corroborated his testimony.

Eric's wife, Mary, worked as a real estate agent. Shortly after receiving Eric's proposal, Mary began showing the Sponsellers homes. They chose a home with a purchase price of approximately $288,000, and Eric purchased it. The Sponsellers sold their other home and moved into the home Eric purchased.[3]

Upon moving into the home, the Sponsellers made several improvements totaling between $5,500 and $6,000. These included installing gutters, masonry, and

---

[3] Mary acted as the Sponseller's agent and earned a commission when selling their other home.

a water softener. Because the home remained in Eric's name, a question arose in 2014 regarding the payment of property taxes; however, the Sponsellers ultimately paid the 2014 property taxes. In 2015 and 2016, the Sponsellers did not pay the property taxes.

After the issues surrounding the title and taxes arose in 2014, Sponseller approached Eric to execute a written document memorializing their verbal agreement. Despite Eric telling Sponseller the agreement "looks right" and he would "get it back to [him,]" Sponseller never received the signed document from Eric. Sponseller did not know whether Eric ever signed it. This unsigned document was admitted as an exhibit during trial.

In December 2016, Lincoln laid off Sponseller. Eric did not pay Sponseller any equity he had earned in the home for the time he continued to work for Lincoln. Sponseller initially sued Eric for breach of contract, fraud, quantum meruit and promissory estoppel. To Sponseller's claims, the defense pleaded the affirmative defense of statute of frauds. Prior to trial, Sponseller non-suited the fraud and quantum meruit claims, leaving only the claims for promissory estoppel and breach of contract.

Following a bench trial, the trial court entered judgment for Sponseller, awarding him actual damages of $158,400, court costs, and pre- and post-judgment

interest at five percent per annum. At defendant's request, the trial court entered findings of fact and conclusions of law. Of relevance, the findings of fact included:

18. Plaintiff's testimony was credible.
a. Plaintiff fully performed tendering consideration in services up until he was prevented from further performance by the defendant.
b. Plaintiff forewent another, more lucrative job opportunity to his detriment because of his reliance on the oral agreement.
c. Plaintiff possessed the property in question.
d. Plaintiff paid taxes on the property in question.
e. Plaintiff made permanent and valuable improvements to the property in question.

The conclusions of law included the following:

2. The agreement between Plaintiff and Eric Ward was a real estate transaction.
a. The statute of frauds requires transactions for real estate and transactions that will span over one year to be in writing.
b. Despite the statute of frauds, a partially performed oral contract for the sale of real estate is enforceable.
3. Defendant was on notice of partial performance of this contract pursuant to facts plead in paragraph 15 of the petition.
4. To relieve a parol sale of land from the operation of the Statute of Frauds, the Plaintiff must show:
a. Payment of the consideration, whether it be in money or services;
b. Possession;
c. The making of valuable and permanent improvements upon the land with the consent; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.
5. This transaction would amount to a fraud upon Plaintiff if it is not enforced.
6. There was an oral agreement between Plaintiff and Eric Ward which is excluded from operation of the statute of frauds due to partial performance.

5

The trial court also concluded that the statute of frauds barred Sponseller's promissory estoppel claim. Since the only writing memorializing the agreement was presented to the defendant for signature several months after the oral agreement, the plaintiff could not aver that he relied on a promise to sign a written agreement when he decided to remain employed with Lincoln.

Mary, on behalf of the Estate, appealed the final judgment and in two issues contends: (1) the statute of frauds applies to this type of oral transaction, and on these facts, partial performance could not excuse its applicability; and, (2) the trial court erred in finding that Sponseller fully performed by tendering payment in services until he was fired and making other payments as performance, because the evidence was legally insufficient to support the finding.

## II. Standard of Review

Whether a contract falls within the statute of frauds is a question of law that we review de novo. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015); *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013). The party pleading the statute of frauds bears the initial burden of proving it applies. *Dynegy, Inc.*, 422 S.W.3d at 642. Once this initial burden is met, the burden then shifts to the other party to prove an exception to the statute of frauds. *See id.* Whether the partial performance exception applies is a fact question. *See Burrus v. Reyes*, 516 S.W.3d 170, 182 (Tex. App.—El Paso 2017, pet. denied). When, as here, the party

6

challenging the legal sufficiency of the evidence supporting a trial court's finding on which it did not have the burden of proof, the party must show there was "no, or insufficient, evidence" to support the finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Healey v. Romero*, No. 05–16–00598–CV, 2018 WL 2126903, at *1 (Tex. App.—Dallas May 7, 2018, no pet.) (mem. op.) (discussing standard of review in the context of the partial performance exception). Under the no-evidence review standard, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference in support of it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998). In a bench trial, the trial court's findings of fact have the same force and effect as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

### III. Analysis

**A. Statute of Frauds**

The statute of frauds "exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties." *Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex. 2001) (citations omitted). The statute of frauds is an affirmative defense in a breach of contract suit and renders a contract to which it applies unenforceable. *See* Tex. R. Civ. P. 94 (enumerating statute of

frauds as an affirmative defense); *see also* Tex. Bus. & Com. Code Ann. § 26.01(a); *S & I Mgmt., Inc. v. Choi,* 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.) ("Under the statute of frauds, certain contracts are not enforceable unless they are in writing and signed by the person against whom enforcement of the contract is sought.").

The statute of frauds provides that a sale of real estate is not enforceable unless the agreement is in writing and signed by the person to be charged with the agreement. *See* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4). Likewise, the statute of frauds requires that an agreement which is not to be performed within one year from making the agreement must be in writing and signed by the person to be charged with the agreement. *See id.* § 26.01(a), (b)(6). In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed. *See Hawkins v. Myers*, No. 02–14–00123–CV, 2015 WL 1646812, at *5 (Tex. App.—Fort Worth Apr. 9, 2015, no pet.) (mem. op. on reh'g.); *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ). If there is a year or more between those two dates, a writing is required for the agreement to be enforceable. *Young*, 917 S.W.2d at 508. "For the one-year provision to apply, performance within one year must be impossible." *Abatement Inc. v. Williams*, 324 S.W.3d 858, 860 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

8

Here, the parties' agreement must comply with the statute of frauds for two reasons: (1) it involved the sale of an interest in real estate; and (2) the agreement was not performable within one year as the terms required Sponseller "to stay onboard for five years." Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4), (6). With respect to the real estate transaction, Sponseller testified that under their agreement by continuing to work for Lincoln for five years, he would earn a twenty percent interest each year in the equity of the home that Eric purchased for him, and at the end of the five years Eric would convey the home to Sponseller. Thus, the agreement involved conveying an interest in real estate. During trial, the defense took Sponseller on voir dire, and he confirmed the agreement involved a sale of real estate, specifically the house, and it would have taken more than a year from the date he and Eric entered the oral agreement to complete it. Accordingly, the defense met its burden of establishing the applicability of the statute of frauds. *See id.*

## B. Partial Performance Exception

Having determined the statute of frauds applies in this case, we turn next to whether Sponseller met his burden to show that the partial performance exception applies. *See Heritage Constructors, Inc. v. Chrietzberg Elec., Inc.*, No. 06–14–00048–CV, 2015 WL 3378377, at *6 (Tex. App.–Texarkana Mar. 4, 2015, no pet.) (mem. op.) (explaining that once defendant meets burden of showing statute of frauds applies, the burden shifts to plaintiff to prove an exception). "[P]artial

performance takes a contract out of the statute of frauds when the party seeking enforcement of the contract partially performed." *Parks v. Landfill Mktg. Consultants, Inc.*, No. 14-02-01243-CV, 2004 WL 1351545, at *4 (Tex. App.–Houston [14th Dist.] June 17, 2004, pet. denied) (mem. op.); *see also Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 161 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Contracts that have been partially performed that would otherwise be unenforceable because they fail to meet the requirements of the statute of frauds, may still be enforced in equity if denial of enforcement would amount to a virtual fraud. *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ).

> When there is strong evidence establishing the existence of an agreement and its terms, and the party relying on the agreement suffers a detriment for which he has no adequate remedy while the other party, if permitted to plead the statute, would reap an unearned benefit, then to apply the Statute of Frauds and declare the agreement unenforceable would be to permit use of the Statute of Frauds to perpetuate fraud.

*Id.* (citation omitted).

The oral agreement essentially required a promise to convey real estate in the future and was a "parol sale of land." To relieve a parol sale of real property from the statute of frauds, a party must prove: (1) payment of consideration in money or services; (2) possession; and (3) making valuable improvements, or in the absent of such improvements, the presence of facts that failure to enforce the agreement would

10

operate as a fraud on the purchaser. *Hooks v. Bridgewater*, 229 S.W. 1114, 1116 (Tex. 1921); *Rhodes v. Kelly*, No. 05–16–00888–CV, 2017 WL 2774452, at *9 (Tex. App.—Dallas June 27, 2017, pet. denied) (mem. op.) (citations omitted).

**1. Element One: Partial Performance, Payment in Consideration**

In this case, the partial performance Sponseller relies upon is the payment of consideration in services, i.e., his continued work for Lincoln. "[O]ne of the exception's requirements is that the performance on which the party relies must be '*unequivocally referable* to the agreement.'" *Westergren*, 453 S.W.3d at 426 (quoting *Chevalier v. Lane's, Inc.*, 213 S.W.2d 530, 533 (Tex. 1948)); *see also Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied) (discussing "unequivocally referable" requirement). As the Texas Supreme Court explained,

> [T]he purpose of the alleged acts of performance must be to fulfill a specific agreement. If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable.

*Westergren*, 453 S.W.3d at 426–27. The Court in *Westergren* went on to explain that the kind of "performance that justifies the exception to the statute of frauds is 'performance which alone and *without the aid of words of promise* is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.'" *Id.* at 427 (quoting *Chevalier*, 213 S.W.2d at 533). Finally, in

11

*Westergren*, the Texas Supreme Court explained that one "cannot . . . rely on . . . oral representations to support a finding that the [performance] was unequivocally referable to the oral contract." *Id.*

Numerous courts have explained that rendition of services for which a person receives a monthly salary is insufficient to take an agreement outside the statute of frauds since services are fully explained by the salary. *See Holloway v. Dekkers,* 380 S.W.3d 315, 324 (Tex. App.—Dallas 2012, no pet.); *Biko v. Siemens Corp.*, 246 S.W.3d 148, 161 (Tex. App.—Dallas 2007, pet. denied); *Timmons v. Scarbrough, Medlin & Assocs., Inc.*, No. 05–05–00235–CV, 2005 WL 3436706, at *2 (Tex. App.—Dallas Dec. 15, 2005, no pet.) (mem. op.); *Spradling v. Corbett*, No. 07-95-0158-CV, 1996 WL 524134, at *1 (Tex. App.—Amarillo Aug. 30, 1996, writ denied); *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no pet.).

The Texas Supreme Court explained in *Chevalier v. Lane's, Inc.* that in the context of employment and performance if an employee worked for a period without compensation, or if the employer had paid the entire amount up front, such circumstances "might well be sufficiently 'corroborative' of or 'referable to' the claimed agreement to justify a judicial departure from the Statute." 213 S.W.2d at 534. The Court further noted that in "the case of a parol sale of land, in which 'full performance,' in the sense of full payment of the consideration by the purchaser, is

12

held not to make the contract enforceable unless accompanied by other circumstances, such as change of possession and erection of valuable improvements." *Id.* at 533.

Likewise, our sister court in *Holloway v. Dekkers* determined that services provided were not unequivocally referable to the agreement, because "a salary compensates for services rendered; if a person receives payment for his services, those services will not act as an exception to the statute of frauds." *Holloway*, 380 S.W.3d at 324. The court reasoned that the party claiming the exception failed to provide any evidence that he did not receive compensation or other benefits while working, thus the partial performance exception did not apply. *See id.* However, in distinguishing that case, *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.* explained that "[u]nlike here, the alleged partial performance in *Dekkers* only involved an individual's rendition of his services for payment." 516 S.W.3d at 161 (citing *Holloway*, 380 S.W.3d at 323–24).

Unlike the foregoing cases where the relied-on performance was deemed insufficient to support the exception because the party received a salary, Sponseller's salaried performance was not the only act that operated as evidence of the agreement. As discussed later in this opinion, Sponseller's continued employment was coupled with other acts corroborative of the agreement, including possession of the property at issue and valuable improvements made to the property. *See Hooks*, 229 S.W. at

1116–17. As our sister court in Dallas explained in *Davis v. Insurtek, Inc.*, there is a long line of cases holding performance for which a party received compensation would be insufficient when there was a dispute about whether the parties had an underlying agreement. *See* No. 05–09–01029–CV, 2010 WL 5395668, at *4 (Tex. App.—Dallas Dec. 30, 2010, no pet.) (mem. op.).[4] Such is not the case here. The undisputed evidence in this case established that Eric's agreement to pay Sponseller home equity of $60,000 per year over five years as additional compensation was the only reason Sponseller stayed with the company and in fact, prior to Eric's offer Sponseller had already accepted another job. Appellant provided no evidence to dispute the terms of the agreement or that the parties had entered into the oral agreement. *See id.* (noting undisputed testimony for reason party accepted job).

At trial, Sponseller testified that if Ward had not made the agreement for the home, he would not have continued working for Lincoln. His wife corroborated this, testifying that although Sponseller had already accepted NCS's offer, he ended up not going to work for them after Eric offered him a house. One of Sponseller's co-workers testified that Eric offered him the same deal he gave to Sponseller, which

---

[4] Of note, the court in *Davis* ultimately concluded the party claiming an exception to the statute of frauds had fully performed rather than partially performed, which the trial court here also determined. *See Davis v. Insurtek, Inc.*, 05–09–01029–CV, 2010 WL 5395668, at *4 (Tex. App.—Dallas Dec. 30, 2010, no pet.) (mem. op.). The trial court explained that Sponseller fully performed until his performance was prevented by the defendant.

14

was equity in a house over five years if he would stay working for Lincoln in lieu of a higher salary or other benefits. Other evidence admitted at trial included NCS's more lucrative offer and testimony from NCS's vice president who said that Sponseller had conditionally accepted their offer but ended up not coming to work for them because of a counteroffer Sponseller received from Eric. He also detailed the terms of NCS's offer. Sponseller explained that the terms of the NCS offer would be approximately $60,000 more per year than his Lincoln salary, which coincided with the amount of the equity he would earn each year in the house. The evidence at trial showed that Sponseller continued to work for Lincoln for three years without receiving any of the additional compensation.[5]

The evidence of Sponseller's continued employment with Lincoln after initially accepting the offer for greater compensation from NCS is more akin to the exception the Supreme Court referred to in *Chevalier* where an employee provides evidence that he worked for a period without compensation. *See Chevalier*, 213 S.W.2d at 534. Although paid a salary, Sponseller's relied-upon performance was accompanied by other circumstances showing that his continued work with Lincoln was attributable to the parties' agreement, like possession and valuable improvements to the property which are discussed below. *See id.* Viewing the

---

[5] Lincoln was not made a party to the lawsuit and the defense did not plead that they were not liable in the capacity in which they were sued for the salary benefits Sponseller would have earned for continuing to work for Lincoln.

evidence in the light most favorable to the trial court's findings as we must, we conclude that Sponseller established his continued employment with Lincoln was unequivocally referable to the agreement for the house Eric purchased in which Sponseller would earn equity over five years. As the party challenging a finding on which she did not have the burden of proof, the Appellant must prove no evidence supports it, which she has failed to demonstrate. *See Croucher*, 660 S.W.2d at 58.

**2. Element Two: Possession**

The second requisite element to relieve a parol sale of land from the statute of frauds is possession. *See Rhodes*, 2017 WL 2774452, at *9. The undisputed evidence at trial established Eric purchased a new home for $288,000 which Sponseller and his wife chose, with the assistance of Eric's wife as a realtor, and Sponseller and his family moved into the home in question and occupied it until he was made to move out. Sponseller testified that he and his family lived in the home Eric purchased for almost three years. His wife also testified they moved into the home. Sponseller and his wife further testified that they paid taxes on the property for 2014 in the amount of approximately $8,000. We conclude the evidence at trial established Sponseller took possession of the property.

**3. Element Three: Valuable Improvements**

The third element to the partial performance exception requires the making of valuable improvements to the property. *See id.; see also Hooks,* 229 S.W. at 1116.

16

Testimony at trial showed Sponseller made improvements to the property, including the installation of gutters, masonry work, and the installation of a water softener system and they paid between $5,500 and $6,000 for such improvements. Sponseller also testified that Eric treated them as the owners of the home after they moved in. Viewing the evidence in the light most favorable to the trial court's findings, we conclude Sponseller made valuable improvements to the property.

**4. Fraud on the Purchaser**

Another factor that may be weighed in favor of the partial performance exception is to what extent failing to enforce the agreement would operate as a fraud on the purchaser. *See Rhodes*, 2017 WL 2774452, at *9. The evidence showed that Sponseller acted to his detriment when he gave up a more lucrative job offer based on Eric's agreement to purchase a home in which Sponseller would earn $60,000 in equity per year. Relying on this agreement, Sponseller and his family shopped for homes with Eric's wife, Sponseller sold his other home, improved the property, and paid taxes on it. After almost three years of performing, Sponseller was terminated but was not paid the equity he earned in the home for those years. Having Sponseller act in reliance on the agreement to his detriment, Eric and Lincoln reaped the unearned benefit of Sponseller's continued employment. Further, if the agreement were not enforced, Eric would reap an additional unearned benefit in the amounts expended to pay taxes on the property and the cost of the improvements. There is

17

more than a scintilla of evidence that supports the trial court's finding that failure to enforce the oral agreement would amount to a fraud on Sponseller. *See Formosa Plastics Corp.*, 960 S.W.2d at 48.

Viewing the evidence in the light most favorable to the trial court's findings, we conclude the evidence adduced at trial established the purpose of Sponseller's act of performance in the form of his continued employment was to fulfill the parties' specific agreement. We hold this evidence coupled with Sponseller's possession of the property and valuable improvements he made to the property is corroborative of the agreement and that the partial performance exception applies. Our holding is limited to the unique factual circumstances presented in this case. We overrule Appellant's issues.[6]

## IV. Conclusion

Appellant has failed to meet her burden to show that no evidence supports the trial court's findings in this case, and the partial performance exception applies, thus removing the parties' agreement from the statute of frauds in this case. *See Westergren*, 453 S.W.3d at 426–27. We affirm.

---

[6] Given our determination that the partial performance exception applies, we do not reach Appellant's second issue of whether the plaintiff fully performed. *See* Tex. R. App. P. 47.1.

18

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 21, 2021
Opinion Delivered November 24, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.

19